## W. B. Ferguson v. W. H. Getzendaner.

### No. 1368.   Decided December 5, 1904.

**Subscription—Contract—Consideration—Implied Promise.**

The citizens of a town, negotiating through a committee to secure the location there of a school established elsewhere, acquired, in the name of a trustee, an optional right to real property on part of which the school was to be located, the remainder being subdivided for sale to secure funds to obtain its location there. Defendant agreed to buy from the trustee, at a price named, one of the lots of such subdivision, conditioned on the school being so located; but afterwards, and before anything more was done, receded from his undertaking and so notified the committee. Held, that, though there was no express promise by the trustee to convey, such undertaking was to be implied, and, the land having been acquired and the school located as contemplated, such implied contract constituted a sufficient consideration for defendant's promise to buy, gave him rights capable of enforcement, and distinguished the transaction from a mere gratuitous subscription from which the promissor could recede at any time before action taken on the faith of it. (Pp. 315, 316.)

Certified questions from the Court of Civil Appeals for the Fifth District.

*H. C. Ferguson, F. P. Powell,* and *J. W. McDugald,* for appellant.—
The obligation of appellant to accept a lot of land in Waxahachie and pay for it, on condition that Trinity University was located on it, the sum of $500, the payee of the obligation having no title to the land and only having a contract for the title upon that condition, was only a proposition, and until it was accepted in some way appellant had the legal right to withdraw it; and it being withdrawn five days after its execution and no negotiation having been begun by the payee and holder for more than two months after the withdrawal and notice to all the committee, it was void. Lewis v. Hillsboro Roller Mills Co., 23 S. W. Rep., 338; Patty v. Hillsboro Roller Mills Co., 4 Texas Civ. App., 227; Williams v. Rogan, 59 Texas, 438; Doyle v. Glasscock, 24 Texas, 200; Hopkins v. Upshur, 20 Texas, 92; Patton v. Rucker, 29 Texas, 408; Beach on Cont., 135, par. 106; Amherst Academy v. Cowls, 6 Pick., 433; Schenectady Stove Co. v. Holbrook, 101 N. Y., 45; McDonald v. Bewick, 51 Mich., 79; Martin v. N. W. Fuel Co., 22 Fed. Rep., 596; 1 Parsons on Cont., 450.

The citizens of Waxahachie having organized a committee of its citizens, with appellee as its chairman and trustee, to devise ways and means to secure Trinity University to be located at that place, he and they became the agents of each of the subscribers to such scheme, and they were bound to follow the direction and authority delegated to them before they could bind such subscriber; and until such proposition as had been obtained had been acted on in some way, they were subject to the control and authority of such principal. Same authorities.

*Templeton & Harding* and *G. C. Groce,* for appellee.—Appellant's obligation was not a mere voluntary subscription to aid in securing the location at Waxahachie of the university mentioned therein, but the same, when executed by him and accepted by said citizens committee, became a contract between appellant on the one hand and appellee and those represented by him on the other, containing mutual obligations and stipulations, the mutual promises being sufficient consideration for each other. By said obligation appellee and his committee were bound to use reasonable diligence to secure the desired location of said university, and to use the net proceeds of appellant's obligation to that end, and to convey to appellant the lot in question, for the price named, when the location of said university as desired should be secured; and appellant, on his part, was bound to accept said lot in accordance with his obligations or pay damages for his default; and neither party had a right at will to repudiate the obligations of said contract after it was executed and accepted. Where a contract is mutual, each party agreeing to do something, such mutuality of obligation is a sufficient consideration to support the contract as to both parties. Cobb v. Beall, 1 Texas,

347, 348; Belton Compress Co. v. Sanders, 70 Texas, 699; Williams v. Rogan, 59 Texas, 438; Beach on Cont., sec. 205, and notes; Williams College v. Dantford, 29 Mass., 541; Amherst Academy v. Cowls, 6 Pick., 433; Rothenberger v. Glick, 52 N. E. Rep., 811; McCleary v. Chipman, 68 N. E. Rep., 320.

It is well settled that the amount of consideration in the absence of fraud or undue influence is ordinarily immaterial, and that where a promisor is to receive anything in consideration of his promise his obligation is not gratuitous, but constitutes a binding contract upon sufficient consideration. Appellant was to receive for his money, in case he was called upon to pay, the lot mentioned in his obligation, and what would be its value to him with Trinity University located upon the tract of which it was formerly a part, was a matter purely for his consideration. Certainly his obligation was not without consideration. Thompson v. Page, 42 Mass., 565; Ives v. Sterling, 47 Mass., 310; Myrick v. French, 68 Mass., 420.

GAINES, Chief Justice.—The following questions have been certified to us by the Court of Civil Appeals for the Fifth Supreme Judicial District for our determination.

"(1) In the year 1901 the citizens of the city of Waxahachie, Ellis County, Texas, and vicinity, in efforts to secure the location at said city of an educational institution known as Trinity University, then located at Tehuacana, Texas, had through a citizens' committee prior to the 1st day of April, 1901, secured an option on certain land near said city which had been subdivided and mapped into lots and blocks, and it was being proposed to sell said lots conditioned upon the location of said university upon said tract of land, the net proceeds of such sales going into a fund to be used in bidding for the location of said university at said city of Waxahachie.

"(2) The option above mentioned was a contract or contracts in writing between the owners of said land and said citizens' committee to convey to W. H. Getzendaner, trustee, said land for $100 per acre in the event Trinity University should be located upon the same, and said committee paid no money for such option.

"(3) Among the subdivisions of land mapped and platted as above mentioned was lot 8 in block 13, said tract being known as University addition to Waxahachie.

"(4) On the 1st day of April, 1901, a subcommittee of said citizens' committee solicited defendant W. B. Ferguson to purchase a lot in said University addition, and on that date the defendant made, executed and delivered to said subcommittee, known as a soliciting committee, his written obligation substantially in words and figures as follows:

" 'Waxahachie, Texas, April 1, 1901.—Whereas a citizens' committee, with W. H. Getzendaner as chairman, has secured an option on certain land and mapped the same as University addition to the city of Waxahachie, Texas, and now proposes to sell said lots on condition that

Trinity University is located on said land, the net proceeds to go into the funds to bid for said University. Now, therefore, in aid of such fund the undersigned does hereby purchase lot No. 8 in block No. 13, in said University addition conditioned as aforesaid and acknowledge myself bound to pay W. H. Getzendaner, trustee, or his successors in trust, the sum of $500 within ten days after the date of final securing such location, or the undersigned has option of paying as much as one-third of such sum cash within ten days after such location and executing for the balance vendor's lien notes in equal amounts due in four, eight and twelve months, drawing 8 per cent per annum interest from date of such location. Notes and deeds to be in usual form. If said university is not located on said land this instrument is null and void. This obligation is payable at the Citizens National Bank at Waxahachie, Texas, where the same is placed in escrow. (Signed) W. B. Ferguson.'

"(5) The above obligation was forthwith placed with the Citizens National Bank of Waxahachie.

"(6) Five days after the delivery of the above obligation and before any agreement had been made between said citizens committee and said Trinity University, and before it was known what bid or sum of money would be required to induce said university to locate on said tract of land, and before said citizens' committee had submitted any proposition to said university, but after the matter of removal of said university from Tehuacana and its location at some other point was being considered by those in authority over said university, and after a committee had been appointed to determine what inducements to this end could be obtained, and to report to the authorities in control of such university, the defendant, W. B. Ferguson, went to the members of said soliciting committee to whom he had delivered his said obligation and asked to withdraw his contract, notifying them that he would not be bound thereby.

"(7) Said committee so applied to the general citizens' committee and informed such committee of the request and demand of defendant, but such general citizens' committee declined to release defendant from his said obligation or to deliver up said obligation to him, of which he was notified by said soliciting committee, and all of this was before any agreement or proposition as above mentioned.

"(8) About the 20th of June, 1901, said citizens' committee for the first time submitted a proposition for the location of said university on said tract of land to the authorities in charge of said Trinity University, which proposition was finally accepted on the —— day of September, 1901.

"(9) On the 3d day of October, 1901, the parties with whom said citizens' committee had an option upon said lands aforesaid conveyed said land to W. H. Getzendaner, trustee, the consideration of such conveyances being $100 per acre for the land conveyed, and before such conveyances said committee had made with numerous other parties con-

tracts and agreements for the sale of practically all the lots into which said land had been subdivided, except the land reserved for college campus, such agreements of sale being substantially of like import as that with said Ferguson except in numbers of lots and in prices, and the prices agreed upon in such obligations were largely in excess of the cost of such land to such committee.

"(10) In the transactions herein above mentioned the said citizens' committee utilized the obligations received by it to pay for said land and to make good its bid for the location of said university, and such committee neither received nor claimed any profit to itself in said transaction.

"(11) The final location of said Trinity University upon the land above mentioned was secured more than ten days prior to the 24th day of October, 1901, and on said date last mentioned plaintiff demanded of defendant compliance by him with the terms of his said obligation and offered to convey to him title to the lot mentioned therein, but defendant refused to accept said lot or to pay for the same either in cash or note, insisting that he was under neither legal nor moral obligation in the matter.

"(12) On the 3d day of March, 1903, the plaintiff sold the lot mentioned in defendant's obligation at public outcry for cash to another party for the sum of $80 as stated in plaintiff's petition and after notice to the defendant as stated in plaintiff's petition.

"This suit was then instituted in the County Court of Ellis County, founded upon the obligation of appellant, above set out, in which appellee prayed judgment for the balance due on said obligation after crediting thereon the proceeds of the sale of said lot. The case was tried by the court without a jury and conclusions of law and fact filed. Among other things the court found that the sale of the land made by appellee on the 3d day of March, 1903, was not made within a reasonable time after appellant had defaulted, and that said lot at the time of said sale, and all times after the said university was secured, was worth the sum of $250. This latter amount was deducted from the amount of the obligation sued on and judgment rendered for appellee for $250 with interest thereon at 6 per cent per annum, from which judgment appellant has appealed. During the last term of this court the judgment of the County Court was reversed and judgment rendered for appellant, and the case is now before us on motion for a rehearing.

"Question 1. Was appellant liable under the foregoing facts on the contract made the basis of appellee's action and the proper judgment rendered in the County Court; or was there such an entire absence of mutuality of obligation shown in the contract sued on, or want of consideration. that the ordinary rules respecting voluntary subscriptions are applicable, and appellant was authorized to withdraw same as he attempted to do, and having notified the committee with which he dealt that he would not be bound thereby, said contract furnishes no basis for a recovery?

"Question 2. Is the written agreement sued on a contract of mutual obligation, upon sufficient consideration, by which appellant agrees, upon the happening of a contingency, viz., the location of Trinity University at Waxahachie, on the land of which the lot mentioned in the instrument is a part, to purchase the land therein described, at an agreed price, which having been accepted by the appellee was enforcible by him upon the happening of the contingency, independent of the assumption of any obligation to Trinity University upon the faith and reliance of said agreement?"

If this had been a mere promise to pay $500 to assist in bringing Trinity University to Waxahachie, it would have been a promise without consideration; and the law is well settled that in such a case the promissor has the right to withdraw his promise at any time before any expense has been incurred, or other thing has been done on the faith of it.

But was the promise of the appellant, Ferguson, a naked promise? This depends, in our opinion, upon the further question whether, by the acceptance of the writing, the appellee, Getzendaner, agreed to do anything as a consideration for the promise of the other party? That he did not expressly promise to convey the lot upon the happening of the condition mentioned must be conceded. But we think it clear that a promise on his part is to be implied. The writing shows that Getzendaner, as chairman of his committee, proposed to sell the lots; that Ferguson promised to pay for one of them at a stipulated price on condition that the university was located at Waxahachie; and that the paper was to be placed in a certain bank in escrow to await the happening of the condition. It also appears that Ferguson signed and delivered it to Getzendaner, who accepted and placed it in the bank as agreed upon by the parties.

Upon the subject of an implied contract where one party only expressly makes a promise, the Supreme Court of Maryland says: "It not unfrequently occurs that contracts on their face and by their express terms appear to be obligatory on one party only; but in such cases, if it be manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied. Thus, if the act to be done by the party binding himself can only be done upon a corresponding act being done or allowed by the other party, an obligation by the latter to do or allow to be done the act or things necessary for the completion of the contract will be necessarily implied. (Citing Churchward v. The Queen, 6 B. & S., 807.) And among the instances given of such implied obligation, is the case where A. covenants or contracts with B. to buy an estate of the latter, at a given price, there, although the contract may be silent as to any obligation on the part of B. to sell, the law implies a corresponding covenant or contract by him

to sell and convey the estate.   (Citing Pordage v. Cole, 1 Wms. Saund., 319.)"   Black v. Woodrow, 39 Md., 194.   The cases cited in the quotation sustain the ruling there announced.   The following cases are also in point:   Lewis v. Insurance Co., 61 Mo., 534, and McCartney v. Glassford, 1 Wash., 579.

Here then we have a promise for a promise and each is a consideration for the other.   The fact that Ferguson may have been induced to make the contract by a desire on his part to aid in locating the university at Waxahachie, makes no difference.   He made a contract and not a mere naked promise, as in case of a subscription to assist the construction of a church or school, when no correlative obligation is assumed upon the other side.

It follows that an affirmative answer should be given to the second question, and it is accordingly so ordered.   This also answers the first question.