## HUNTER v. GULF PRODUCTION CO.
## (No. 9164.)

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 15, 1919. On Motion for Rehearing and for Leave to File Supplemental Motion for Rehearing, March 6, 1920.)

1. **Mines and minerals** ⊘⇒58—**Oil lease containing option contract binding when supported by consideration paid.**

An option provision in an oil lease, although unilateral, is binding on the maker, if it is supported by a sufficient consideration paid, and can be enforced to the same extent as any other contract.

2. **Mines and minerals** ⊘⇒58—**Option given lessee to surrender oil lease supported by sufficient consideration.**

An option given lessee in an oil lease to surrender the lease, after the well has been finished and is producing oil in paying quantities, on the payment of $100 to the lessor, was sufficiently supported by a consideration, where the lease recited that the sum of $14.25, paid to lessor, was "in full satisfaction of any and every privilege granted."

3. **Contracts** ⊘⇒50 — **Promisor's motive not consideration.**

In the law of contracts, the promisor's motive in making the promise is not a consideration for the promise.

4. **Mines and minerals** ⊘⇒59—**Finding that lessee paid rental for extension of oil lease supported by evidence.**

In an action to cancel an oil lease on the ground that rental for an extension had not been paid in time, evidence *held* sufficient to sustain a finding in favor of defendant on such issue.

5. **Mines and minerals** ⊘⇒79(4) — **Bank held agent of lessor for receiving extension rentals.**

A provision in an oil lease to the effect that rentals for extension of the lease should be paid to the lessor or deposited to his credit in a certain bank made the bank the agent of the lessor to receive the money and hold the same.

6. **Mines and minerals** ⊘⇒79(4)—**Payment of extension rentals to bank as lessor's agent is payment, though not credited.**

Where oil lease provided that rentals for extensions of the lease should be paid to the lessor, or deposited to his credit in a certain bank before a certain date, payment to the bank of the rentals had the same effect as payment to the lessor, and any failure of the bank to pay the money to the lessor, or to give him proper credit on its books, is not properly chargeable to the lessee.

7. **Contracts** ⊘⇒143—**Must be read and considered as a whole.**

In the interpretation of a contract, the instrument should be read and considered as a whole.

---

⊘⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

On Motions for Rehearing and for Leave to File Supplemental Motion for Rehearing.

**8. Appeal and error ⚙═832(5) — Appellate court without jurisdiction to determine issue of fraud in judgment.**

The appellate court is without jurisdiction to hear and determine, on motion for leave to file supplemental motion for rehearing, the issue of fraud in the rendition of the judgment by the trial court.

Appeal from District Court, Eastland County; Jno. Burkett, Judge.

Action by S. D. Hunter against the Gulf Production Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Sayles & Sayles, of Eastland, and Davidson & Hickman, of Abilene, for appellant.

D. Edward Greer, of Houston, A. H. Carrigan, of Wichita Falls, and John G. Gregg and R. E. Hardwicke, both of Ft. Worth, for appellee.

DUNKLIN, J. On July 13, 1918, S. D. Hunter acquired from J. R. Layfield and wife an oil and gas lease on 57 acres of land out of the James Tinsley survey, situated in Eastland county. On December 16, 1916, prior to the date of that lease, Layfield and wife had executed an oil and gas lease on the same land to the Gulf Production Company. Layfield and wife owned the fee-simple title to the land when each of said leases was executed. Hunter instituted this suit against the Gulf Production Company to cancel the lease so given to that company, and from a judgment denying him the relief sought he has appealed.

The instrument executed by Layfield and wife to the Gulf Production Company gave to the grantee, which is therein called "the company," its successors and assigns, an exclusive lease upon the land in controversy for the purpose of mining the same for oil, gas, and other minerals, and, among others, it contained the following provisions:

"There is expressly granted to the company the right at any time before the expiration of twelve months from this date to begin operations for the drilling of a well for oil or gas on said premises, and also the right to extensions of time in which to begin such operations, for the successive periods of six (6) months, on condition that the company shall, on or before the first day of each respective six months period pay to lessors, or deposit to credit of J. R. Layfield in the First State Bank of Eastland, Texas, the sum of seven and 13/100 ($7.13): Provided, that if such payment shall not be made on or before the first day of each such respective six months period, then and on such default, this lease shall wholly determine; and provided, further, that these successive periods in which the right may be acquired to begin the operations of drilling a well in search of oil and gas, shall not exceed in the aggregate five (5) years from this date, and if such operations shall not be begun on or before the expiration of said five (5) years from this date, then this lease shall wholly determine."

"If the company shall avail itself of the right herein granted and begin operations of drilling a well on said premises then, from and after the beginning of such operations, the company shall not be required to make any further money payments hereunder. If the company shall begin such operations of drilling a well, it obligates itself to prosecute such operations with reasonable diligence."

"If, in the exercise of the right hereby conferred, oil or gas be found in paying quantities on said land, then the company shall deliver as royalty to said lessors, free of all expense, one eighth (⅛) part of all the oil saved from that produced, such delivery to be made either in tanks with connection by lessors provided, or into any pipe line that may be connected with the well; and if any well on said premises produces gas in paying quantities, and such gas is used or marketed off the premises by the company, then the said lessors shall be paid at the rate of one hundred ($100.00) dollars per year for each and every such well, such payments to be made at the end of each such year."

"It is further provided that if oil or gas or other minerals in paying quantities be found, and the company, its successors or assigns hereunder, should conclude that it or they do not desire to operate longer under this lease, then the right is conferred to surrender the same upon payment of one hundred ($100.00) dollars to the lessors, and such right of surrender shall also confer the privilege of removing from said premises any and all material placed thereon by the company, its successors and assigns."

"The company has this day paid to the said lessors the sum of fourteen and 25/100 ($14.25) dollars, the receipt whereof is hereby acknowledged, and which payment is received in full satisfaction of any and every right and privilege granted hereby, including the right to extend the period for the exploration of said land."

It is insisted that the clause copied above, giving the lessee the option to surrender the lease after oil in paying quantities has been discovered, upon the payment to the lessor of $100, renders the lease "unilateral" in character, and therefore invalid because wanting in mutuality, and hence lacking sufficient consideration, passing to the lessor, to support it.

[1] We are unable to concur in that contention. It cannot be denied that the surrender clause in the lease gives the lessee the option to surrender it, and thereby to release itself from all further obligations thereunder. In other words, it clearly appears that the lessee is given the option to surrender the lease at any time, and thereby to be discharged from further obligations thereunder, or to continue it in full force and effect for the full term specified, by complying with the provisions for drilling, or in lieu

thereof by paying to the lessor the sum of $7.13 semiannually, each payment to be made before the beginning of the next succeeding six months' period. And even after oil is found in paying quantities, in consideration of the payment of the further sum of $100, the lessee is given the right, at its option, to abandon the well and surrender the lease, and to remove from the premises all its casings and other materials placed thereon, or to continue the lease in full force. But it is well settled that an option contract, although unilateral, is binding upon the maker, if it is supported by a sufficient consideration paid; and when so supported it can be enforced to the same extent as any other contract. National Oil & Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 979; 1 Elliott on Contracts, § 232; 3 Elliott on Contracts, § 2310; 6 R. C. L. pp. 686, 687, §§ 93 and 94. In the text last cited it is pointed out that the term "mutuality," used in the discussion of the law of contracts, is properly applicable only when there is no other consideration than the mutual promises of the parties, and that the element of mutuality, in the proper meaning of the term, is not essential if the promise or agreement is supported by a valuable consideration already paid. And in this connection it is further said, in effect, that by reason of a failure to observe this distinction many of the decisions tend to confuse and mislead the reader.

Appellant insists, further, that the sum of $100, stipulated in the paragraph of the lease quoted above, should, as a question of law, be construed as a nominal consideration only, because it is painly insignificant, and not sufficiently valuable or adequate to support the option given the lessee to surrender the lease, and withdraw and remove casing from a well, and thereby destroy it, after the well has been finished and is producing oil in paying quantities. It will be noted that in the last-quoted paragraph of the lease the sum of $14.25 paid to the lessor by the lessee is recited and acknowledged to be "in full satisfaction of any and every privilege granted." One of the privileges granted to the lessee was that of surrendering the lease and removing all materials placed on the land by the lessee. But for the privilege last mentioned, it was further provided in another paragraph quoted, that the lessee should pay an additional consideration of $100. Presumably, that additional consideration was stipulated to destroy the force of the possible claim that as the lessee was under the implied obligation to proceed with the production of oil after the discovery of same in paying quantities, the original consideration paid would not support the right to surrender after such discovery, even though it should be held sufficient to support such right prior thereto.

This was not a suit for the rescission of the lease for fraud, accident, or mistake, nor was any contention made by pleading or proof that the instrument does not truly speak the full contract of the parties thereto. The question, then, is one of legal construction of a plain unambiguous contract. In Quebe v. G., C. & S. F. Ry. Co., 98 Tex. 6, 81 S. W. 20, 66 L. R. A. 734, 4 Ann. Cas. 545, it was held that a consideration of one dollar was a valuable and legal consideration, and, although small, was sufficient to support a contract of settlement for damages resulting from personal injuries sustained by an employé of the railway company while in the discharge of the duties of his employment. In the case of National Oil & Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 979, there is an intimation to the same effect. See, also, Pierce Fordyce Oil Ass'n v. Woodrum, 188 S. W. 245. In Elliott on Contracts, § 3849, the following is said:

"A consideration may be valuable, though it is not adequate. The existence of a sufficient consideration is frequently important in determining whether there was fraud on the grantor or his creditors. But mere inadequacy of consideration, when there is no fraud, affords on ground for voiding a deed."

In 2 Pom. Equity Jurisprudence, § 926, the following is said:

"The rule is well settled that where the parties were both in a situation to form an independent judgment concerning the transaction, and acted knowingly and intentionally, mere inadequacy in the price or in the subject-matter, unaccompanied by other inequitable incidents, is never of itself a sufficient ground for canceling an executed or executory contract. If the parties, being in the situation and having the ability to do so, have exercised their own independent judgment as to the value of the subject-matter, courts of equity should not and will not interfere with such valuation. In some of the earlier decisions, mere inadequacy, either in the price or in the value of the subject-matter, was held to be a sufficient hardship, which might defeat the specific performance of the executory contract when set up as a defense. The doctrine, however, is now settled that mere inadequacy—that is, inequality in value between the subject-matter and the price—is not a ground for refusing the remedy of specific performance; in order to be a defense, the inadequacy must either be accompanied by other inequitable incidents or must be so gross as to show fraud."

[2, 3] In view of the plain and unambiguous language of the lease, to the effect that the option given the lessee to surrender it was in consideration of the $14.25 paid at the time the instrument was executed, and the further sum of $100 to be paid after oil should be found in paying quantities, and in the absence of any pleading or evidence to show that such was not the agreement of the parties, there is no room for the contention that as it was the evident purpose of the lessor to have the land developed for oil production, the stipulations for drilling for oil

should be construed as the real and only consideration which could support the lease, and that, as the lessee did not bind itself to drill a well, the lease was void for lack of consideration. Furthermore:'

"In the law of contracts, the promisor's motive in making the promise is not a consideration for the promise." 6 R. C. L. p. 653, § 66.

See, also, 1 Elliott on Contracts, § 204.

[4] The lease was dated December 16, 1916. It was shown without controversy that all rents in lieu of drilling were paid up to June 16, 1918. But there was an issue of fact whether or not the lessee, prior to that date, paid the rent of $7.13 to cover the six months period beginning with that date. The case was tried without a jury, and the trial judge found in appellee's favor upon that issue. By different assignments appellant has challenged that finding as being unsupported by any proper proof offered by appellee; and as contrary to the evidence offered by appellant. We deem it unnecessary to review all the evidence offered upon that issue. It is sufficient to say that there was evidence of sufficient probative force to support the court's finding, and, notwithstanding there was also proof that would have sustained a finding to the contrary, the same was not of such overwhelming preponderance as to require this court to set aside the finding. The uncontradicted proof was that from appellee's office in Houston a draft in favor of the First State Bank of Eastland, Tex., for $299.81, was forwarded to one of appellee's officers in Wichita Falls, Tex., together with letters of advice, addressed to said bank, directing that the amount of the draft be placed to the credit of several different persons to cover rentals on oil leases held by appellee; the respective amounts to the several parties being stated in a separate letter of advice for each, and the total of such respective amounts aggregating the sum of $299.81. It was further shown without controversy that this draft was duly forwarded to the bank by registered letter mailed in Wichita Falls on May 28, 1918, and received by the bank on the following day, and that the bank also received at the same time several letters of advice mentioned, and placed the credits on its books in compliance with instructions therein contained, but failed to place any part of the draft to J. R. Layfield and two or three others. None of the letters of advice could be found at the time of the trial. While, according to the recollection of the bank officials, credits were entered on the books of the bank in favor of all parties mentioned in the letters of advice received with the draft, yet appellee's agent in Wichita Falls, who registered the letter to the bank, testified that it was his uniform custom, before sending out such a draft, to go over his books and place a check mark on the separate record kept for each lease, to show that such a letter of advice, together with the amount of rent paid, was mailed out, and that the book so kept on the lease in controversy showed such a check. That evidence, in connection with other circumstances not necessary to be noted, was sufficient to support the finding now under discussion. Clemenger v. Flesher, 185 S. W. 304.

But the proof further showed that the amount remitted to the bank to cover such rental was never placed to the credit of Layfield on the books of the bank until several days after its due date, to wit, June 16, 1918, and that after it was so credited it was tendered to Layfield, who refused to receive it because it came too late. And appellant insists that, as the credit was not so entered, the rent was not paid, in accordance with the terms of the lease. He insists, in effect, that by the terms of the lease the bank was made the agent of the lessee to pay the lessor, either by delivering him the amount of rent or by placing it to his credit on its books subject to his check, and that until one or the other of those acts was performed there was no payment of the rent within the meaning of the lease. The following excerpt from 7 Corpus Juris, p. 606, fairly reflects the rulings of numerous other authorities cited by appellant to support his contention:

"If the debtor or payor leaves money in the bank to pay his obligation, or, being a depositor, specially directs the bank to pay such obligation, the bank becomes his agent, and is responsible to him for the safe-keeping and proper application of the money."

[5, 6] We think those authorities have no proper application to the question now under discussion, since they relate solely to the question of liability of the bank to the depositor. In this case the issue is between the lessee, who deposited the money, and the lessor, for whose benefit the deposit was made, and the question is whether it was made in compliance with the contract. We think it clear that the bank was, in law, made the agent of the lessor to receive the money and hold it for him, and when the money was paid to the bank, with instructions from the lessee to deposit it to the credit of the lessor, the terms of the lease relative to payment of rents were fully complied with, and that any failure of the bank to pay it to the lessor, or to give him proper credit on its books, was not properly chargeable to the lessee. If the bank was, by the lessor's selection, made his alter ego to receive the rents, then it would logically follow that, if it could be said that in accepting such payment the bank acted as the agent of the lessee, the same could be said of the lessor himself, if payments had been made to him directly, which would be a reductio ad absurdum. Texas Co. v. Wimberly, 213 S. W.

286; Beatty Oil & Gas Co. v. Blanton (D. C.) 245 Fed. 979.

[7] In addition to the reasoning advanced in those authorities, which we approve, we wish to suggest, further, that the lease does not specifically stipulate that it was the duty of the lessee to see to it that any deposit made for Layfield's benefit should be entered to his credit on the books of the bank, as it is, in effect, insisted by appellant was its legal import. Such would be an exceedingly strained and unreasonable construction, and contrary to the evident intention of the parties, as reflected by the entire instrument, read and considered as a whole, which is the general basic rule for the interpretation of contracts. 6 R. C. L. p. 841, § 230; 2 Elliott on Contracts, § 1508. See, also, Archer's Oil & Gas, p. 696, and decisions there cited.

For the reasons indicated, all assignments of error are overruled, and the judgment is affirmed.

On Motions for Rehearing and for Leave to File Supplemental Motion for Rehearing.

Appellant has filed a motion for leave to file a supplemental motion for rehearing as a supplement to his original motion for rehearing, filed herein November 28, 1919. The proposed motion is attached to his motion for leave to file it, and presents the contention that the rendition of the judgment by the trial court was fraudulently procured. Attached thereto are certain affidavits in support thereof; also a prayer that this court order the issuance of process to take the depositions of other witnesses upon the issue of fraud presented, or, in the alternative for subpœnas requiring them to appear before this court in person and give their testimony upon that issue.

[8] This court is of the opinion that it is without jurisdiction to hear and determine such issue of fraud in the rendition of the judgment of the trial court, and for that reason, and that reason only, the motion for leave to file said supplemental motion for rehearing is overruled; and appellant's original motion for rehearing, filed November 28, 1919, having been duly considered, is in all things overruled.