**TERRE HAUTE BREWING CO., Inc., v. DUGAN.**

**No. 11246.**

Circuit Court of Appeals, Eighth Circuit.

March 22, 1939.

Walter W. Calvin, of Kansas City, Mo. (Bert S. Kimbrell, of Kansas City, Mo., on the brief), for appellant.

Anthony P. Nugent, of Kansas City, Mo., for appellee.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

Appellant, Terre Haute Brewing Company, a corporate citizen of Indiana, brought suit in the district court for the Western District of Missouri against appellee, Frank T. Dugan, doing business as Edelweiss Sales Company, defendant below, to recover amounts claimed to be due from said defendant for beer sold and delivered to him and for the value of containers in which beer had been delivered to defendant and had not been returned to plaintiff. Defendant, claiming under an alleged verbal contract with plaintiff, whereby he had been granted the exclusive right and privilege to sell and distribute the product of a brewery under the control of plaintiff, and alleging an unauthorized breach of that contract by plaintiff, filed a counterclaim for damages in the sum of $50,000. At the close of all the testimony counsel for plaintiff moved for a directed verdict in its favor upon defendant's counterclaim. The motion was overruled, and upon submission the jury returned a verdict of $10,000 upon the counterclaim. The amount due plaintiff upon the main case was stipulated to aggregate $14,189.32, and the jury was directed by the court to return its verdict on this phase of the case in accordance with the stipulated agreement. Therefore the only controversy presented in this appeal concerns the counterclaim. The parties will be termed as in the trial court.

It appears from the record that since April, 1933, defendant Dugan has been in the beer distributing business, having taken over the Edelweiss beer account from the Shoenhafen Brewery Company. In 1934 the A.B.C. Brewing Corporation was in operation in St. Louis, Missouri, and in December, 1934, defendant took from that company the agency for the distribution of A.B.C. Bohemian Style Beer. It is alleged that his territory consisted of the northern half of the State of Kansas, Kansas City, Missouri, and the Counties of Johnson, Cass, Clay, Platte, and Jackson in the latter state. The A.B.C. Company got into financial difficulties and, for a time in 1935, defendant's arrangement with that company was interrupted, and the supply of beer was discontinued; but, in November, 1935, the plaintiff company took over the management and control of the A.B.C. Brewing Corporation, having "such absolute control as the majority of stock ownership gives". Thereupon the officers of the two companies became substantially identical. There is some dispute in the testimony as to the circumstances attending the resumption of the distribution agency of the defendant, but it sufficiently appears that an arrangement was made, effective, at least in February, 1936, between the Terre Haute Company and Dugan, whereby the latter was to continue as distributor for A.B.C. Bohemian Style Beer, substantially in the territory above described. Thereafter, on May 28, 1936, defendant was displaced as such distributor in favor of The Atlas Beverage Company of Kansas City, Missouri; and, from about June 1, 1936, plaintiff refused to ship to defendant any more A.B.C. Bohemian Style Beer.

It is this action, pleaded as a breach of the alleged contract between plaintiff and defendant, that forms the basis of the counterclaim urged by the latter. A number of points are urged by counsel in argument and brief; but in our judgment the entire case turns upon a determination of the effectiveness and validity of the arrangement entered into by the parties.

█ In as much as the jury found in favor of defendant, it is our duty to take the most favorable view of his evidence and the inferences reasonably and justifiably to be drawn therefrom. Humes v. United States, 170 U.S. 210, 18 S.Ct. 602, 42 L.Ed. 1011. Therefore, we are disposed to take substantially defendant's testimony

as to the terms of his alleged contract. In fact there is very little difference between plaintiff and defendant in this regard, except as to the effect of the language employed. Dugan describes the arrangement as follows:

"A. Well, I was assured that it would only be a matter of a few weeks until beer would be bottled and they would have an ample supply of it, and was asked to resume my old territory which was granted me by Mr. Robinson, the northern half of Kansas and the counties that I have mentioned, including Kansas City, Missouri. The territory was given to me and I was told that it would be mine as long as I wanted to put my personal time and financial backing into it, that I could have the territory absolutely with no interference from any outside distributor whatever.

"Q. Was it an exclusive arrangement for that territory? A. Yes, sir.

"Q. And what, if anything, was said about your remaining in the beer business? A. As long as I remained in the beer business.

"Q. And that was how long they told you you could have the exclusive agency for A.B.C. Bohemian style beer? A. Yes, sir, providing, of course, I devoted my time and attention to it.

"Q. And did you devote your time and attention to it? A. Yes, sir.

"Q. And did you give it your personal and financial support? A. Yes, sir.

"Q. And did you remain in the business of distributing beer? A. I am still in it."

█ From the foregoing it is apparent that, so far as the defendant is concerned, no obligation rests upon him to continue this agency any longer than he may wish to put his personal time and financial backing into it, and, incidentally, to remain in the beer business. The contract, therefore, is indefinite as to duration and lacks mutuality. If he can refuse, at will, to continue as a distributor for this particular brand of beer, the same right of self-determination must be accorded to the plaintiff. This is obviously an agency contract, and not one for the purchase and sale of beer. Otherwise, it would also be vulnerable to the charge of indefiniteness as to quantity. But we have not here an agency coupled with interest, which must be an interest in the thing itself, and the property which is the subject of the agency. A mere interest in results or proceeds, as

by way of compensation, is not enough. Beebe v. Columbia Axle Co., Mo.App., 117 S.W.2d 624, 629; Meyer v. Pulitzer Pub. Co., 156 Mo.App. 170, 136 S.W. 5.

■ Without question this alleged contract is void for lack of mutuality under the general law applicable. Tamm v. Ford Motor Co., 8 Cir., 80 F.2d 723; Claiborne-Reno Co. v. Du Pont De Nemours & Co., 8 Cir., 77 F.2d 565; E. I. Du Pont De Nemours & Co. v. Claiborne-Reno Co., 8 Cir., 64 F.2d 224, 89 A.L.R. 238. For a case very similar in essential features see Santaella & Co. v. Otto F. Lange Co., 8 Cir., 155 F. 719. The foregoing decisions are supported by a great wealth of citation. Such being the state of the general law, we have recourse to the decisions of the Missouri courts upon this subject, and find them in substantial harmony with those of this and other federal jurisdictions.

■ "Many cases could be cited, but they are all along the same line. There must be mutuality of agreement to give a valid contract. A written instrument which undertakes to create liability as to one party, without liability or obligation upon the other party thereto, is void as to both". Hudson v. Browning, 264 Mo. 58, 174 S. W. 393, 396; Gillen v. Bayfield, 329 Mo. 681, 687, 46 S.W.2d 571; Aden et al. v. Dalton et al., 341 Mo. 454, 107 S.W.2d 1070.

■■ "The contract in question does not appear to be a contract of sale, but appears to be a contract of agency. It may be conceded, as contended, that the rule is that an ordinary, oral contract of employment, such as one of agency, which is wholly indefinite in point of time as to duration or is not one to be performed within a year will not be considered as a perpetual contract and enforced as such, but, on the contrary, may be terminated at any time by either party".

Beebe v. Columbia Axle Co., Mo.App., 117 S.W.2d 624, 628, citing a long list of Missouri decisions by both Supreme Court and Courts of Appeals. Cases apparently expressing divergent views will be found to involve consideration of differing factual situations. Because of this lack of mutuality in the alleged contract, it was susceptible of termination at any time by either party and no recovery for damages in the way of anticipated profits can be sustained under defendant's counterclaim.

■ A limitation upon the rule as above announced, and as recognized by the Missouri courts, is that if it appears that the agent, induced by his appointment, has incurred expense in the matter of the agency without having had sufficient opportunity to recoup such from the undertaking, the principal will be required to compensate him in that behalf. In his amended counterclaim defendant alleges: "That defendant from and after that date last mentioned (December, 1935) was urged by plaintiff through personal contact by its officers and telephone conversations with them to expend large sums of money and did expend large sums of money, approximately $5,000.00 in the development of new business, trade and the establishing of sub-agents and procuring customers for the A.B.C. Bohemian Style Beer, and in the purchase of equipment for handling the proper distribution thereof".

In his testimony defendant states that plaintiff "authorized expenditures in newspaper advertising, told me to hire a salesman, and told me to sample the territory, which I did. It cost me in the neighborhood of $807.00 as I recall". This seems to be the extent of the expenditure pleaded as induced and authorized by the appointment as agent, and that was paid by plaintiff. Defendant testifies in the most general way as to expense incurred for salesmen, salary, etc.; for a period of approximately three months; but, in laying the foundation for damages for loss of profits, he discloses that he made a gross profit for the sale of A.B.C. beer in the sum of $2,400. In this computation salaries and salesmanship expense would naturally be considered. It will be noted that defendant had theretofore been engaged in the business of distributing this same beer in this same territory, and was, and still is, in the beer business generally. He was presumed to be equipped for such distribution as was assumed by him. The record discloses nothing more than has been stated in the way of inducement on the part of plaintiff. This phase of the matter seems to be narrowed down to the following three items of expense which defendant alleges were incurred.

He purchased a tractor and trailer at a cost of $2,200, and sold it for $1,000; he bought an International truck for $900, and sold it for $500, he built a new storage room at a cost of $500. The record with respect to these three items is insuffi-

cient upon which to base any ground for recovery against plaintiff, under the limitation of the agency rule. The storage room is still of use, and no loss in that respect is shown. No special necessity for truck, tractor and trailer is shown to have been imposed by this agency contract. They were bought and sold,—the record does not say when nor why. Defendant is still in the beer business, and a little paint would inexpensively change the lettering on the side of the tractor.

It follows from the foregoing considerations that the judgment below should be, and is, affirmed in so far as it is based upon plaintiff's claims, but that, in so far as it is based upon defendant's counterclaim, it should be, and is, reversed and vacated, and the cause is remanded with directions to grant a new trial as to the issues properly presented by the counterclaim only, if defendant desires to retry said last named issues. It is so ordered.