STUFFLEBEME et al. v. JACK.

No. 10092.

Court of Civil Appeals of Texas.
Austin.

Nov. 26, 1952.

Rehearing Denied Dec. 17, 1952.

460

Burford, Ryburn, Hincks & Ford, Sam P. Burford by Roy L. Cole, all of Dallas, for appellants.

Chas. Romick, Dallas, for appellee.

HUGHES, Justice.

H. S. Jack, Sr., appellee, doing business under the name of Dayton Pop-up Sprinkling Systems of Dallas, sued appellants, B. A. and L. Sidney Stufflebeme, for breach of a written contract to pay appellee for repairs made by him on sprinkling systems installed by appellants in Dallas. The form of the suit was in the nature of a suit upon a sworn account. When all the evidence was in the trial court, at appellee's request, instructed the jury to return a verdict for appellee. This was done and judgment thereupon rendered for appellee for $1229.69, the amount of repairs claimed, plus interest.

Appellants' points are that the instructed verdict was improper because there were issues of fact raised by the evidence as to whether or not (1) a certain letter signed by B. A. Stufflebeme was intended to be a contract between the parties and (2) whether or not bills offered in evidence by appellee were for services and repairs for which appellants were responsible. As to these items it was also contended that there was no evidence to show they were appellants' responsibility.

The background of the case is this:

Prior to July 1, 1947, the Stufflebemes owned the Dayton Irrigation System of Dallas, a partnership engaged in the sale and service of lawn sprinkling systems. This concern installed numerous sprinkling systems in Dallas each sale being made with a five-year guarantee against defective materials and workmanship.

About July 1, 1947, the Stufflebemes sold the Dayton Irrigation System of Dallas to appellee and on October 15, 1947, a formal bill of sale was executed which contained this provision:

"It is understood and agreed that the grantee, H. S. Jack (appellee) does not assume responsibility for servicing any systems, installations or equipment installed by the grantor, B. A. Stufflebeme, prior to July 1, 1947."

On February 7, 1948, B. A. Stufflebeme, at appellee's request, sent him the following communication:

"Dear Mr. Jack:

"This will be your authority to make such repairs as are necessary under our Guarantee on the Dayton Irrigation Sprinkler Systems we installed in Dallas. Inasmuch as we guaranteed these jobs for a period of five years they will require a certain amount of service which we want the customer to have, by all means.

"As you finish these repair jobs you will kindly mail me a bill and I will remit promptly to cover. If for any reason we decide we can service the systems which we installed in Dallas ourselves, to a better advantage then we reserve the right to do so by giving you the notice in writing. Until you receive such notice, however, you are to service these contracts for us and payment will be made as above stated."

Appellee was never notified to discontinue servicing the systems installed by appellants.

All of the charges for repairs and replacing defective materials by appellee on systems installed by appellants and for which this suit is brought to recover were incurred subsequent to the date of the above letter, February 7, 1948.

When appellee purchased the sprinkling systems from appellants an oral agreement was made that appellee would service systems previously installed by appellants for which they would pay him. Mr. B. A. Stufflebeme testified that such oral agreement was made with the distinct understanding that appellee would bill him within one week from the date of servicing and that he would "under no circumstances pay any bill unless it is submitted within one week of the time you perform any service on these systems."

Few if any bills were sent appellants within one week from the date of servicing.

B. A. Stufflebeme further testified that his sole purpose in writing the letter of February 7, 1948, was to enable appellee to establish credit for purchasing materials needed to service the systems installed by the Stufflebemes.

Appellants in their answer upon which trial was had alleged that

"The letter of February 7, 1948, attached as Exhibit 'A' to Plaintiff's Second Amended Original Petition, was written in accordance with the oral agreement previously made, and such letter was intended to and did cover only repairs and service jobs covered by the guarantee."

Neither fraud, accident nor mistake was alleged in connection with such letter.

The trial court took the position that the letter of February 7, 1948, and its acceptance by appellee constituted a valid enforceable contract complete on its face and which could not be varied by prior oral agreements in the absence of allegations of fraud, accident or mistake.

■ Appellants do not contend that the letter and its acceptance do not evidence a complete and binding contract and we agree with the trial court that a valid and unambiguous contract is thereby shown. This written contract necessarily superseded the prior oral agreement because both contracts related to the same subject matter.

We do not consider the statement of Mr. B. A. Stufflebeme concerning his purpose in writing the letter of February 7 to be any evidence that the contract evidenced thereby was to be ineffective. A person may borrow money for many purposes but his obligation is reflected by the loan contract and not the object for which it was procured. So here, the fact that appellants may have made the contract declared upon for the purpose or object stated does not detract from its vitality as a contract. Ferguson v. Getzendaner, 98 Tex. 310, 83 S.W. 374, Hunter v. Gulf Production Co., Tex.Civ.App., 220 S.W. 163 (Ft. Worth); Hoffer v. Eastland Nat. Bank, Tex.Civ. App., 169 S.W.2d 275 (Eastland). In the first case cited the court said:

"Here, then, we have a promise for a promise, and each is a consideration for the other. The fact that Ferguson may have been induced to make the contract by a desire on his part to aid in locating the university at Waxahachie makes no difference. He made a contract * * *." [98 Tex. 310, 83 S.W. 376]

The contract must be enforced as made since no grounds for its avoidance have been alleged or proved. Childress v. First State Bank of Barnhart, Tex.Civ.App., 264 S.W. 350 (Austin), 10 Tex.Jur. p. 516.

As to the state of the evidence about which appellants complain in their second and third points we find that appellee testified that when he took the business over from appellants that he was furnished with a list of persons for whom sprinkling systems had been installed by appellants and he thus knew who were entitled to service under the guarantee. He also testified that as these customers requested service it was given and work sheets were prepared by those who actually did the work showing the number of hours and parts required in making needed repairs and that the itemized charges shown on an exhibit attached to his pleading were based upon such work sheets and were limited to those repairs which were due to defective workmanship or material, a matter determined by him from a personal inspection of the premises or from the work sheets turned in by his employees and by conversations with them.

Appellants offered no evidence that any of the charges made by appellee were unauthorized or unreasonable and they never investigated any of such charges or made an inquiry concerning the same. Neither did appellants, prior to institution of this suit, give any reason for not paying appellee for services performed under the February 7 contract, nor did appellants request appellee to cease making repairs thereunder. The only affirmative defense pleaded by appellants was that appellee breached the verbal contract in that he did not furnish weekly itemized statements, concerning which Mr. B. A. Stufflebeme testified:

"Q. Even after you were sued you didn't order Jack to discontinue the repairs, did you? A. I considered the first week that he made a repair he automatically discontinued it, because he violated his contract and I didn't consider it in effect after that time.

"Q. You never wrote a letter to him to that effect, did you? A. I didn't

agree originally to write him anything.

"Q. This contract that you speak of says, 'If for any reason we decide we can service the systems which we installed in Dallas ourselves to a better advantage, then we reserve the right to do so by giving you notice in writing.' You never gave such notice to Mr. Jack, did you? A. No, after he violated his contract, why, I dismissed it.

"Q. You mean when he failed to give you an itemized statement each week? A. That's right.

"Q. You just considered the contract at an end? A. That's right.

"Q. Is that right? A. Yes sir."

Appellants stated in their brief that six items, included in the judgment, totalling $43.85 are unsupported by work sheets. Appellee does not contest this statement and since appellee testified that the sworn account attached to his petition was based on work sheets we believe that the proof fails as to these items and they will be deducted from the judgment.

We also hold that items totalling $99.70 for services performed for F. M. Jacobson are without any support in the evidence and should be deducted from the judgment. Some of the charges making this total are supported by work sheets but these affirmatively show that the services were not due to defective workmanship or materials.

Except as to the charges specially noted above we hold that the trial court did not err in directing a verdict even though such instructions rested alone upon the testimony of appellee.

This record shows that appellants have utterly ignored and disregarded their contractual obligations and duties and have made no effort to inform themselves of their liability or nonliability for charges for services which they authorized appellee in writing to perform for their benefit.

This record also shows that appellee's testimony and records, except in a few isolated instances, are accurate, clear and free from any suspicious circumstances so as to require the trial court to accept their

veracity as a matter of law. Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904; Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 114 S.W.2d 226, 136 S.W.2d 207.

We will render the judgment which the trial court should have rendered. Rule 434, Texas Rules of Civil Procedure.

The judgment of the trial court is reformed by reducing the recovery $143.55, and as reformed the judgment of the trial court is affirmed.

Costs of appeal are adjudged against appellee.

Reformed and affirmed.

### On Appellee's Motion for Rehearing and Motion to Retax Costs.

■ Appellee contends that this is a suit based on a sworn account and controlled by Rule 185, T.R.C.P.; that appellant did not file a sworn denial as required by the Rule and therefore his account was prima facie correct and substantiating evidence was not needed. Hence he asserts we erred in deducting any items for lack of evidence.

Appellee went to trial upon his third amended original petition, filed October 9, 1951. His previous petitions are not in the record. In this third petition appellee sought recovery for $1135.39 for materials furnished and labor performed under the contract of February 7, 1948, as set out in exhibit "A" attached thereto, for $94.30 repairs which he estimated would be made in 1951 and $300 estimated repairs in 1952 and for $500 attorney's fees.

The pleading reference to Exhibit "A" was in these words "That an itemized statement of said account is attached hereto marked Exhibit 'A'."

Such third petition bore this affidavit:

"Before me, the undersigned authority, on this day personally appeared H. S. Jack, and upon being by me duly sworn on oath deposes and says that he is the Plaintiff named in the foregoing Petition, whose name is subscribed thereto; that such action is within his knowledge just and true, that

it is due, and that all just and lawful offsets, payments and credits have been allowed.

"/s    H. S. Jack
H. S. Jack, Plaintiff"

Appellant's trial pleading was its first amended original answer which was filed March 28, 1951, several months before appellee's third petition was filed. This answer contained many exceptions to appellee's second amended petition, principally on the ground that no itemized account of the sums sued for was contained in the pleading. This answer specially denies that appellants "are indebted to plaintiff in the sum of $1229.69 or in the sum of $300.00." This answer was sworn to by B. A. Stufflebeme as follows:

"That he is a defendant named in the foregoing answer whose name is subscribed thereto; that the facts as alleged in said answer are within his knowledge true and correct; that he is authorized to make this affidavit for himself and for L. Sidney Stufflebeme."

A jury was empanelled to try the case and a three-day trial ensued resulting in a statement of facts filed in this Court containing 148 pages, the first 37 of which were consumed before appellee rested his case. While the court instructed a verdict for appellee this was apparently on its own motion as no motion therefor by appellee appears in the record.

There is nothing in the record to show that the parties tried this case as a suit on a sworn account under Rule 185 or in any manner other than a suit on a contract with appellee bearing the burden of proof.

We must decide the case here on the same theory on which it was tried in the court below. 3-B Tex.Jur. 275.

The motion for rehearing is overruled.

The motion to retax costs is also overruled. Rule 139, T.R.C.P.; Campbell Cleaning and Dye Works, Inc. v. Porter, Tex.Civ.App., 183 S.W.2d 253 (El Paso, error ref.); Thompson v. Gibbs, Tex.Sup., 240 S.W.2d 287.

Motion for rehearing and motion to retax costs overruled.