**Ellis D. WHEELER, Petitioner,**

v.

**S. E. WHITE, Respondent.**

**No. A–10598.**

Supreme Court of Texas.

Nov. 10, 1965.

Rehearing Denied Feb. 2, 1966.

Adams & Browne, Beaumont, for petitioner.

Keith, Mehaffy & Weber, Beaumont, for respondent.

**94** ■ 

SMITH, Justice.

■ This is a suit for damages brought by petitioner, Ellis D. Wheeler, against respondent, S. E. White. Wheeler alleged that White had breached a contract [1] to secure a loan or furnish the money to finance the construction of improvements upon land owned by Wheeler. Wheeler further pleaded, in the alternative, that if the contract itself was not sufficiently definite, then nevertheless White was estopped from asserting such insufficiency. White filed special exceptions to all of Wheeler's Third

1. Contract between Ellis D. Wheeler, Party of the First Part, and S. E. White, Party of the Second Part:

"That said Party of the First Part is the owner of Lots Nine (9), Ten (10), and Eleven (11) (excepting the South one hundred ten (110') feet of Lot Nine (9), all of Block Number Seven (7), of BRINKMAN ADDITION to the City of Port Arthur, Jefferson County, Texas. Said Party of the First Part hereby employs Party of the Second Part for the purpose of securing a loan to finance the construction of improvements upon said property; said improvements to face on the Port Arthur-Orange Highway one hundred forty feet (140') and extend back a depth of eighty feet (80'); said building to be constructed according to plans and specifications heretofore agreed on by the parties hereto. The loan to be made by, or obtained by, Party of the Second Part for the Party of the First Part, and to be in the sum of SEVENTY THOUSAND AND 00/100 ($70,000.00) DOLLARS and to be payable in monthly installments over a term of fifteen (15) years and bear interest at a rate of not more than six (6%) per cent per annum.

"Said loan is to be obtained on or before six (6) months from date of this contract, either from funds provided by Party of the Second Part or from third persons whom Party of the Second Part may negotiate with to provide such funds. In either event Party of the First Part agrees to sign all necessary papers required of Lendor to create proper liens.

"Party of the First Part agrees to pay to Party of the Second Part the sum of FIVE THOUSAND AND 00/100 ($5,-000.00 DOLLARS for his services in making or securing said loan for Party of the First Part. Said FIVE THOUSAND AND 00/100 ($5,000.00) DOLLARS shall be due and payable to Party of the Second Part as soon as the SEVENTY THOUSAND AND 00/100 ($70,000.00) DOLLARS loan is made available for construction of said premises; and should party of the First Part fail and refuse to pay said FIVE THOUSAND DOLLARS ($5,000.00) when due, Party of the Second Part shall have the right to enforce payment by filing suit in a Court of competent jurisdiction, and Party of the First Part hereby specifically agrees to pay ten (10%) per cent additional on said sum as Attorney Fees and all costs of Court in connection with said suit.

"This agreement voids and takes precedence over previous agreements by and between Ellis D. Wheeler and S. E. White, concerning the hereinabove described property.

"Party of the First Part agrees that when said loan has been obtained that he will proceed with all reasonable haste and diligence in having the improvements for which said loan is obtained constructed, and to execute all necessary agreements, liens, etc., that may be required in the process of, and consummating said loan. In the event that Party of the Second Part obtains said loan but Party of the First Part does not use the financing thus obtained by Party of the Second Part for any reason, then Party of the First Part will pay to Party of the Second Part the sum of FIVE THOUSAND AND 00/100 ($5,000.00) DOLLARS for his services in obtaining said loan.

"In addition to the above, Party of the First Part agrees to allow Party of the Second Part six (6) months exclusive right to secure reliable tenants to occupy seventy (70') feet frontage in the Commercial Building which he contemplates building, said seventy (70') feet fronting on the Port Arthur-Orange Highway; said rentals to be not less than ONE AND 60/100 ($1.60) DOLLARS per square foot per year. Should Party of the Second Part secure tenants to the remaining seventy (70') feet frontage before tenants are secured by Party of the First Part, or others, then Party of the Second Part may secure tenants for the remaining portion of said building. Party of the First Part agrees to pay Party of the Second Part, in addition to the payment of said FIVE THOUSAND AND 00/100 ($5,000.00) DOLLARS as above specified, a five (5%) per cent commission on all rentals paid by tenants obtained by Party of the Second Part; said five (5%) per cent commission to be paid for the life of the lease granted to said tenants."

Amended Original Petition. The special exceptions asserted that the pleaded contract did not contain essential elements to its enforceability in that it failed to provide the amount of monthly installments, the amount of interest due upon the obligation, how such interest would be computed, when such interest would be paid, and that the alternative plea of estoppel was, as a matter of law, insufficient to establish any ground of recovery. All special exceptions were sustained, and upon Wheeler's declination to amend his pleadings, the trial court entered its judgment dismissing the case and ordered that Wheeler take nothing from White by reason of his suit. The Court of Civil Appeals has affirmed the judgment of the trial court. 385 S.W. 2d 619. We have concluded that the trial court did not err in sustaining the special exceptions directed at the sufficiency of the contract itself, but that Wheeler's pleadings on the theory of estoppel state a cause of action. Accordingly, we reverse the judgments of the trial court and the Court of Civil Appeals and remand the cause for trial.

■ Since the trial court sustained White's special exceptions to Wheeler's petition, we necessarily must assume that all the alleged material facts are true. Wheeler alleged that as the owner of a three-lot tract of land in Port Arthur, Texas, he desired to construct a commercial building or shopping center thereon. He and White entered into an agreement, embodied in the written contract involved here, whereby White was to obtain the necessary loan for Wheeler from a third party or provide it

himself on or before six months from the date of the contract. The loan as described in the contract, was to be " * * * in the sum of SEVENTY THOUSAND AND 00/100 ($70,000.00) DOLLARS and to be payable in monthly installments over a term of fifteen (15) years and bear interest at a rate of not more than six (6%) per cent per annum." Additionally, under the contract White was to be paid $5,000.00 for obtaining the loan and a five per cent commission on all rentals received from any tenants procured by White for the building. Wheeler alleged that he has been ready and willing to comply with his part of the agreement at all times since the contract was made.

After the contract had been signed by both parties, White assured Wheeler that the money would be available and urged him to proceed with the necessary task of demolishing the buildings presently on the site so as to make way for construction of the new building. The buildings on the site had a reasonable value of $58,500.00 and a rental value of $400.00 per month. By way of reassurance, White stressed the fact that in the event the money was unobtainable elsewhere, he would make the loan himself. Pursuant to such promises Wheeler proceeded to raze the old building and otherwise prepare the land for the new structure; thereafter, he was told by White that there would be no loan. After White's refusal to perform, Wheeler made reasonable efforts to obtain the loan himself but was unsuccessful. In the pleadings[2] Wheeler pleaded the necessary elements of inducement and reliance which entitle him to recover if he can prove the facts alleged.

2. "Pleading further plaintiff shows the Court that if for any reason said contract is not sufficiently specific and definite, then nevertheless defendant is estopped to so claim and to set up any insufficiency because of the defendant's act in entering into said contract and exhorting plaintiff to clear the premises to make ready for the construction and defendant's representations after the date of said contract to proceed with the demolition of said buildings and clearing the site and that the money would be forthcoming and that defendant would obtain said loan and if for any reason said money could not be obtained elsewhere then said defendant would himself loan the money and plaintiff in reliance on said contract and said exhortations and said representations, both in said contract and given verbally by the defendant after the date of said contract defendant is estopped to claim any deficiency of said contract."

Where a promisee acts to his detriment in reasonable reliance upon an otherwise unenforceable promise, courts in other jurisdictions have recognized that the disappointed party may have a substantial and compelling claim for relief. The Restatement, Contracts, § 90, says:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

According to Dean Hildebrand's Texas Annotation to the Restatement, Texas follows Section 90, supra. See Ferguson v. Getzendaner, 98 Tex. 310, 83 S.W. 374 (1904); Morris v. Gaines, 82 Tex. 255, 17 S.W. 538 (1891); and others. These early cases do not speak of the doctrine of promissory estoppel in specific terms since those cases were written before the compilation of the Restatement, but, while many of them dealt with subscription transactions or transactions within the statute of frauds, it is readily apparent that the equities involved in those cases are applicable to the instant case. See also: Rouff v. Washington & Lee University, 48 S.W.2d 483 (Tex.Civ. App.1932, error ref.); Thompson v. McAllen Federated Woman's Bldg. Corp., 273 S.W.2d 105, 108 (Tex.Civ.App.1954, writ dis'm); Allegheny College v. National Chataqua County Bank, 246 N.Y. 369, 159 N.E. 173, 57 L.R.A. 980 (1927); Greiner v. Greiner, 131 Kan. 760, 293 P. 759 (1930); Ricketts v. Scothorn, 57 Neb. 51, 77 N.W. 365, 42 L.R.A. 794 (1898); 1 Corbin, Contracts, §§ 193–209 (1950); Boyer, Promissory Estoppel: Principle from Precedents, 50 Mich.L.Rev. 639, 874 (1952); and Boyer, Promissory Estoppel: Requirements and Limitations, 98 U.Pa.L.Rev. 459 (1950).

The binding thread which runs through the cases applying promissory estoppel is the existence of promises designedly made to influence the conduct of the promisee, tacitly encouraging the conduct, which conduct, although not necessarily constituting any actual performance of the contract itself, is something that must be done by the promisee before he could begin to perform, and was a fact known to the promisor. As to the argument that no new cause of action may be created by such a promise regardless of its established applicability as a defense, it has been answered that where one party has by his words or conduct made to the other a promise or assurance which was intended to affect the legal relations between them and to be acted on accordingly, then, once the other party has taken him at his word and acted on it, the party who gave the promise cannot afterward be allowed to revert to the previous relationship as if no such promise had been made. This does not create a contract where none existed before, but only prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them. See 1 Williston, Contracts, §§ 139–40 (Rev.ed.1936); and 48 A.L.R.2d 1069 (1956).

The function of the doctrine of promissory estoppel is, under our view, defensive in that it estops a promisor from denying the enforceability of the promise. It was said in the case of Dickerson v. Colgrove, 100 U.S. 578, 580, 25 L.Ed. 618, that:

"The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden * * *. This remedy is always so applied as to promote the ends of justice."

In the case of Goodman v. Dicker, 83 U.S. App.D.C. 353, 169 F.2d 684 (1948), the trial court held that a contract had not been proven but that " * * * appellants were estopped from denying the same by reason of their statements and conduct upon which appellees relied to their detriment." In

that case, Dicker relied upon a promise by Goodman that a franchise to sell radios would be granted and radios would be supplied. In reliance upon the promise, Dicker incurred expenses in making preparations to engage in the business of selling radios. The franchise was not granted and Goodman failed to deliver the radios. The appellate court in holding that Dicker was entitled to damages for moneys expended in preparing to do business, said:

"We are dealing with a promise by appellants that a franchise would be granted and radios supplied, on the faith of which appellees with the knowledge and encouragement of appellants incurred expenses in making preparations to do business. Under these circumstances we think that appellants cannot now advance any defense inconsistent with their assurance that the franchise would be granted. Justice and fair dealing require that one who acts to his detriment on the faith of conduct of the kind revealed here should be protected by estopping the party who has brought about the situation from alleging anything in opposition to the natural consequences of his own course of conduct. * * "

The Court, having so held, rendered its judgment that Goodman was liable for moneys expended in preparing to do business under the promised dealer franchise, but was not liable for loss of profits on the radios which were never delivered.

The Court in the Goodman case, in refusing to allow damages based on a loss of anticipated profits, apparently acted in harmony with the theory that promissory estoppel acts defensively so as to prevent an attack upon the enforceability of a contract. Under this theory, losses of expected profits will not be allowed even if expected profits are provable with certainty. The rule thus announced should be followed in the present case. We agree with the reasoning announced in those jurisdictions that, in cases such as we have before us, where there is actually no contract the promissory estoppel theory may be invoked, thereby supplying a remedy which will enable the injured party to be compensated for his foreseeable, definite and substantial reliance. Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained. Since the promisee in such cases is partially responsible for his failure to bind the promisor to a legally sufficient contract, it is reasonable to conclude that all that is required to achieve justice is to put the promisee in the position he would have been in had he not acted in reliance upon the promise. See Goodman v. Dicker, supra; Terre Haute Brewing Co. v. Dugan, 102 F.2d 425 (C.C.A.8th, 1939); Kearns v. Andree, 107 Conn. 181, 139 A. 695, 59 A.L. R. 599 (1928); Fuller and Perdue, The Reliance Interest in Contract Damages, 46 Yale L.J. 52 (Part I) and 373 (Part II) (1937); note 13 Vand.L.Rev. 705 (1960); and note 59 Dickinson L.Rev. 163 (1954).

The judgments of the trial court and the Court of Civil Appeals are both reversed and judgment is here entered remanding the cause to the trial court for trial on its merits in accordance with this opinion.

GREENHILL, Justice (concurring).

The Court of Civil Appeals denied a recovery of damages here because the contract, it felt, was too indefinite in its provisions under Bryant v. Clark, 163 Tex. 596, 358 S.W.2d 614 (1962). The holding in Bryant v. Clark was that the contract was not sufficiently definite to be specifically enforceable. The contract here in question, viewed in context, is different in some respects from that in the Bryant case; and I would not extend Bryant v. Clark. See the criticism of that case in 5A Corbin, Contracts 283 (1964).

But assuming that the contract here, under Bryant v. Clark, is not definite enough to be specifically enforced, it is sufficiently definite to support an action for damages. Restatement, Contracts § 370, comment b.

There are Texas cases in which damages have been denied after a holding that the contract was not specifically enforceable. See, e. g., Wilson v. Fisher, 144 Tex. 53, 188 S.W.2d 150 (1945); Robertson v. Melton, 131 Tex. 325, 115 S.W.2d 624, 118 A. L.R. 1505 (1938); and Alworth v. Ellison, 27 S.W.2d 639 (Tex.Civ.App.1930, writ refused). In each of these cases, however, the contracts were held to be within the Statute of Frauds and not enforceable for that reason in a suit for damages. 1 Williston, Contracts § 16 (Rev.ed. 1936). The contract here in question is not within the Statute of Frauds and will support an action for damages.

While I agree with the judgment entered by the Court, it seems to me that the above is a sounder ground upon which to rest our decision.