COURT OF
APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-015-CV
 
MCN ENERGY ENTERPRISES, INC.       
           
           
           
          
APPELLANT
FORMERLY NAMED MCN        
           
           
           
           
          
AND APPELLEE
INVESTMENT CORPORATION
V.
OMAGRO DE COLOMBIA, L.D.C.       
           
           
           
          
     APPELLEE
          
           
           
           
           
           
           
           
        AND APPELLANT
------------
FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY
------------
OPINION
------------
Appellant MCN Energy Enterprises, Inc. (MCN)
asks that we reverse the jury's verdict and trial court judgment awarding
Appellee Omagro De Colombia, L.D.C. (Omagro) $2,781,041.36 for a claim of
negligent misrepresentation and that we render judgment that Omagro take
nothing. We will affirm.
The Agreement
Omagro is a company controlled by
petroleum engineer Naresh Vashisht. Omagro produces urea, a nitrogen fertilizer
used for plants and crops. In 1996, Vashisht decided to operate a urea plant
that he bought in Peru. He soon moved the plant to Colombia. Unable to find
adequate bank financing, he approached MCN's president, Rai Bhargava, and asked
him to buy an interest in Omagro as an international investment. Eventually, MCN
and Omagro signed a memorandum of understanding in which the two companies
agreed they would associate for the purpose of owning and operating the urea
plant.
Each party agreed to deal with the other
in good faith. The memorandum stated the companies' agreement that as long as
MCN was negotiating in good faith, Omagro would share with MCN information to
use in making joint decisions about the project and would not solicit or
encourage proposals from others. The parties further agreed that within thirty
days the companies would sign "definitive documents," consisting of a
stock purchase agreement and documents concerning financing, plant construction
and operation, and the distribution of the plant's profits. The memorandum also
stated that within thirty days after the definitive documents were signed, MCN
would reimburse Omagro for a percentage of the verifiable development costs
Omagro incurred before those documents were signed. Finally, the memorandum
provided that MCN would conduct a due diligence review within the first thirty
days after signing the memorandum and would have no obligation to consummate the
deal unless satisfied with that review. The memorandum was signed July 14, 1997,
and eventually it was amended and extended six times. The final extension of the
memorandum was dated March 16, 1998, extending the date for signing the
definitive documents until April 15, 1998. In the summer of 1998, MCN's
president, Bhargava, was replaced by Joe Williams.
Due Diligence Efforts
In 1997, after the memorandum was signed,
George Robles, MCN's "point man" for the transaction, and Purna Pai,
an MCN chemical engineer, visited Colombia to conduct due diligence for the urea
project. When they returned after inspecting the plant, they gave Omagro no
indication that MCN would not be interested in it. To the contrary, when they
came home from Colombia, Robles, Pai, and Shanti Sharma (the man in charge of
MCN's international investments) told Omagro the plant looked fine to them. In
August 1997, MCN asked for a thirty-day extension within which to sign the
definitive documents. The request was granted by a sixty-day extension letter
the two companies signed, that also extended the thirty-day period for MCN to
conduct its due diligence.
Omagro continued to pursue the project,
obtaining a "mandate agreement" signed by International Finance
Corporation, MCN, and Omagro to proceed with the financing of the project.
Omagro then spent money to conduct soil studies, design electrical systems, do
engineering work, and to continue repairing and cleaning the plant's equipment.
Because MCN and Omagro decided to transform the plant into a
"granular" operation, costs again increased, and Omagro bought more
equipment in the United States, storing it in Houston. That equipment was
inspected by MCN's Robles and Pai, who once again indicated that MCN was
committed to the project. Meanwhile, Omagro sent a memo to MCN containing
Omagro's analysis of the bids received for constructing and operating the plant
and identifying the party Omagro wished to hire for that purpose. Robles reacted
by calling Omagro to agree with the hiring recommendation. Also, Omagro sent MCN
a copy of a proposed gas contract with Ecopetrol, to which MCN made no
objection.
MCN Withdraws
Without warning, fourteen months into the
transaction, Robles and Sharma telephoned Vashisht in September 1998 to tell him
that MCN would not invest in the project with Omagro. Vashisht then wrote a
letter to MCN's new president, Williams, to protest MCN's sudden withdrawal. MCN
responded to Omagro with a letter dated November 10, 1998, stating that MCN
would not invest in the operation of Omagro's urea plant because MCN believed
the memorandum of understanding had "expired." The September telephone
call and November letter were the first times MCN expressed any concerns or
reservations to Omagro about the Colombia urea plant.
Omagro Sues MCN
In September 1999, Omagro sued MCN
alleging causes of action for breach of contract, promissory estoppel, breach of
good faith and fair dealing, fraud, and negligent misrepresentation. At trial,
the jury heard evidence that from April 1997 until September 1998, MCN personnel
negligently misrepresented to Omagro, through words and conduct, that MCN was
committed to making an investment in the construction and operation of the urea
plant, and that Omagro relied to its detriment on the negligent
misrepresentations of MCN's words and conduct.
From the evidence, the jury answered
"yes" to question 3 of the charge, which asked whether MCN made a
negligent misrepresentation on which Omagro justifiably relied. Question 3
defined "misrepresentation" as "any manifestation by words or
other conduct by one person to another that, under the circumstances, amounts to
an assertion not in accordance with the facts." The question instructed
jurors that a "negligent misrepresentation" occurs when a party,
acting either in the course of his business, or in a transaction in which he has
a pecuniary interest, makes a representation that supplies false information to
guide others in their business, and without exercising reasonable care or
competence in obtaining or communicating the represented information.
On direct examination, Robles conceded
that, despite his favorable comments to Omagro, he had determined in 1998 that
the urea project would not get done. On cross-examination, Robles agreed that
"from the very beginning," he did not believe it would fit MCN.
Moreover, Robles conceded that he felt he could not be honest with Omagro
because it might hurt his own employment at MCN. Pai testified that soon after
his first visit to the plant in Colombia, he concluded that the project was not
technically feasible. Pai did not tell that to Omagro. Pai also admitted that
when he went to Houston in January 1998 to inspect equipment Omagro had bought
to transform the plant to a "granular" plant, he concluded the
equipment was substandard, but he did not report that to Omagro. Pai conceded
that he knew Omagro was continuing to spend a lot of money on the project. Pai
also admitted that the MCN people with whom Omagro was talking should have been
informed that Pai had made two negative reports to MCN about the project. In
answer to question 4, the jury found that for the damages proximately caused by
MCN's negligent misrepresentations, Omagro is entitled to recover $2.2 million,
as fair and reasonable compensation to reimburse it for expenses it incurred in
connection with the urea plant project. The trial court signed a final judgment
for Omagro for $2.2 million, plus $581,041.36 in prejudgment interest.
MCN's Appeal
MCN presents five issues on appeal. The
first complains that Omagro relied on the same evidence to prove its three
theories of liability against MCN: breach of contract; fraud; and negligent
misrepresentation. MCN asserts that because the jury found MCN neither breached
the contract, nor committed fraud related to it, the jury had no reasonable
basis for finding that Omagro independently proved a compensable injury for
negligent misrepresentation in the transaction. MCN's second issue contends
Omagro presented both legally and factually insufficient evidence of the
essential elements of negligent misrepresentation. Omagro counters the second
issue by arguing that MCN has failed to preserve a factual sufficiency complaint
because MCN failed to file a motion for new trial after the jury verdict.
Because MCN concedes in its reply brief that its claim of factual insufficiency
is waived, that portion of the second issue is moot. We will address the first
and the remainder of the second issues together.
With regard to MCN's legal sufficiency
challenge, we are required to consider all of the evidence in the light most
favorable to Omagro, the party for whom the verdict has been rendered, and to
indulge every reasonable inference from that evidence in Omagro's favor. See
Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997).
Our review must be based on the actual wording of the question and instructions
submitted to the jury. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711,
715 n.5 (Tex. 2001). MCN complains about jury question 3, arguing MCN cannot be
considered liable for negligent misrepresentation without evidence of an
"affirmative" misrepresentation it made to Omagro. However, MCN's
complaint is contrary to the wording of the jury charge. The jury's instruction
in question 3 does not mention the word "affirmative." Instead, it
defines only a "misrepresentation" as "any manifestation by words
or other conduct by one person to another that, under the circumstances, amounts
to an assertion not in accordance with the facts." MCN's appeal does not
complain of the word "misrepresentation," and the jury charge does not
limit the definition to only "affirmative" misrepresentations. When,
as here, no objection was made to a jury instruction, evidence to support a
finding based on the instruction should be assessed in light of the instruction
the trial court gave the jury. City of Fort Worth v. Zimlich, 29 S.W.3d
62, 71 (Tex. 2000).
Legally sufficient evidence exists to show
that the words and conduct of MCN's point man, Robles, and its petroleum
engineer, Pai, were misrepresentations of the type defined in jury question 3.
Their words and conduct, along with that of Sharma, repeatedly spurred Omagro to
expend more money by making Omagro believe MCN would be joining Omagro in the
operation of the urea plant. The specific words and conduct of the negligent
misrepresentations have been stated above and will not be repeated. Suffice it
to say that evidence of the negligent misrepresentations made by Robles, Pai,
and Sharma establishes conclusively that they were made on behalf of MCN in the
course of its business and in connection with the transaction in which MCN had a
pecuniary interest--but were not in accord with the true facts and were false
when made to Omagro. MCN never attempted to correct the false or misleading
statements. When one makes a representation to another that later becomes
misleading or false, he has a duty to correct the false information to the
misled party and not continue to conceal the truth. Anderson, Greenwood
& Co. v. Martin, 44 S.W.3d 200, 212-13 (Tex. App.--Houston [14th
Dist.] 2001, pet. denied). Both negligence and causation may be established by
either circumstantial or direct evidence. Birmingham v. Gulf Oil Corp.,
516 S.W.2d 914, 917 (Tex. 1974) (op. on reh'g).
The evidence of the words and conduct of
MCN's personnel, done over a period of fourteen months while Omagro was
expending millions of dollars for the joint benefit of MCN and Omagro, is
legally sufficient to have proven to a reasonable jury that MCN did not exercise
reasonable care or competence and, indeed, that MCN worked to hide the truth
from Omagro, until after September 1998. A reasonable jury was able to conclude
that no reasonably prudent person would have acted as MCN acted. The evidence
also is legally sufficient to demonstrate to a reasonable jury that Omagro
relied on MCN's negligent representations. Vashisht testified that if he had
been told the truth as soon as it became apparent to MCN's personnel, Omagro
could and would have found another investor partner. Pai testified that he knew
Omagro was spending more money on the project and, for that reason, conceded MCN
should have told Omagro the truth early in the transaction. We overrule MCN's
first and second issues.
MCN's third issue asserts that because the
jury awarded Omagro damages that equal the benefit of the bargain, Omagro
erroneously is placed in the same position it would have enjoyed if MCN had
signed the definitive documents. MCN insists that in this case, Omagro is
controlled by a contract/tort principle that prevents any plaintiff from
recovering breach of contract damages for liability under a tort theory. See
D.S.A., Inc. v. Hillsboro Indep. Sch. Dist., 973 S.W.2d 662 (Tex. 1998).
To apply the contract/tort principle here,
the parties first must have an agreement, the breach of which will create
identifiable "benefit of the bargain" damages. Id. at 663.
Nevertheless, MCN also relies on the jury's answer to question 1, that there
never was a binding and enforceable agreement obligating it to execute
definitive documents, or otherwise continue with the project, or to reimburse
forty percent of Omagro's development costs. Yet, when jury question 1 asked
whether MCN failed to comply with the terms of the memorandum of understanding,
the jury answered "no." And by answering "no" to question 1,
the jury accepted MCN's theory, that no agreement legally obligated MCN to
execute definitive documents or reimburse forty percent of Omagro's development
costs. Thus, the jury found that the so-called "benefit of the
bargain," an alleged obligation to pay Omagro forty percent of its costs,
was not available to Omagro in its action for breach of contract.
For a long time, the Texas Supreme Court
has held that obligations and duties separately imposed by contract and by tort
may co-exist. See Formosa Plastics Corp. USA v. Presidio Eng'rs. &
Contractors, Inc., 960 S.W.2d 41, 44 (Tex. 1998); Jim Walter Homes,
Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986); Int'l Printing Pressmen
& Assistants' Union v. Smith, 198 S.W.2d 729, 735-36 (Tex. 1946). And
these cases are not altered by D.S.A., Inc. 973 S.W.2d at 663 (stating
that the court was not deciding whether a party breached a legal duty
independent of its contractual duty). We hold here MCN had a tort duty not to
make negligent misrepresentations, and we decline to apply contract/tort
principles in this case. Even without the memorandum of understanding, MCN had a
duty not to negligently misrepresent that it was committed to a business deal
when it was not. Shell Oil Prods. Co. v. Main St. Ventures, L.L.C., 90
S.W.3d 375, 382 (Tex. App.--Dallas 2002, pet. denied).
The damages of $2.2 million found by the
jury's answer to question 4 are not limited to reimbursing forty percent of
Omagro's development costs. Instead, question 4 allowed the jury to award any
damages proximately caused by MCN's negligent misrepresentation, including
reimbursement of Omagro's expenses incurred in connection with the project. That
includes the sixty percent of Omagro's costs MCN had no obligation, except from
breaching its tort duty, to reimburse. MCN failed to object to the wording of
the instruction about the measure of damages or submit its own instruction
specifically limiting the jury to consideration of only MCN's contractual share
of development costs. The evidence in the record clearly supports the conclusion
that the jury's award of damages from MCN's misrepresentations is for an
independent tort injury. Here, the undisputed evidence shows that Omagro spent
$3.6 million of development costs in reliance on MCN's negligent
misrepresentations. A jury may award damages anywhere within the trial court's
range of the presented evidence. Clary Corp. v. Smith, 949 S.W.2d 452,
467 (Tex. App.--Fort Worth 1997, pet. denied). The jury therefore had before it
sufficient evidence to support its $2.2 million verdict. We overrule the third
issue.
The fourth issue contends that the trial
court denied MCN the right to provide the jury with evidence of one of its
"most important reasons" for withdrawing from the transaction. MCN
suspected from evidence it gained outside the jury's presence that Omagro had
paid a bribe to the wife of a Colombian government official, not disclosing it
in violation of the Foreign Corrupt Practices Act. 15 U.S.C.A. §§
78dd-1--78dd-2 (West 1998). In connection with its fourth issue, MCN argues that
if the jury had only known about the alleged bribe, Omagro's negligent
misrepresentation claim would have been defeated. Initially, we note that the
evidence shows that MCN's November 10, 1998 letter to Omagro does not mention
the alleged "bribe" as a reason for cancelling its participation in
the transaction. Next, Daniel Schiffer, former MCN senior vice president and
general counsel, testified to the trial court outside the jury's presence that
MCN was not aware of any such bribe until three years after it withdrew from the
urea plant project. Finally, Vashisht denied to the court that he had paid a
bribe. Omagro objected to allowing the jury to hear the bribery evidence by
filing a motion in limine.
A trial court has the sound discretion to
admit and exclude evidence. Pack v. Crossroads, Inc., 53 S.W.3d 492,
499 (Tex. App.--Fort Worth 2001, pet. denied). A party desiring to reverse a
judgment on evidentiary error must show that the error probably resulted in an
improper judgment. Id. The trial court granted the motion because the
alleged relevance and/or probative value of the evidence was significantly
outweighed by its prejudicial effect. Tex. R. Evid. 403. The record reveals no
abuse of discretion in the court's ruling. We overrule the fourth issue.
In the fifth issue, MCN asserts that the
trial court used an incorrect date for accrual of prejudgment interest. The date
from which statutory prejudgment interest should begin is a question of law that
an appellate court must review de novo. See generally Johnson v.
City of Fort Worth, 774 S.W.2d 653, 655-56 (Tex. 1989). Prejudgment
interest accrues on the amount of a judgment during a period that begins on the
earlier of the 180th day after the date a defendant like MCN receives written
notice of a claim against it, or the date the suit is filed. Tex. Fin. Code Ann.
§ 304.104 (Vernon Supp. 2003); Johnson & Higgins, Inc. v. Kenneco
Energy, Inc., 962 S.W.2d 507, 531 (Tex. 1998). A "claim" is a
demand for compensation or an assertion of a right to be paid. Johnson,
962 S.W.2d at 531.
On October 29, 1998, Vashisht sent a
letter to MCN, demanding Omagro's right to be paid by MCN. The letter was
Omagro's claim. Id. The trial court used this date to calculate
prejudgment interest. We overrule MCN's fifth issue.
Omagro's Cross-Point
Once the evidence in the trial closed, the
trial court granted a directed verdict against Omagro on its cause of action for
promissory estoppel. In a sole cross-point, Omagro complains that it is entitled
to a new trial of its claim for promissory estoppel.
In reviewing a directed verdict, we must
consider all of the evidence in the light most favorable to Omagro, the party
against whom the verdict was granted, disregarding all evidence and inferences
to the contrary. See Smith v. Elliott, 68 S.W.3d 844, 846 (Tex.
App.--El Paso 2002, pet. denied). If conflicting evidence of probative value on
any theory of recovery exists, an instructed verdict is improper, and we must
remand the case for jury determination of the issue. Id.
If a promisee has reasonably and
detrimentally relied on an otherwise unenforceable promise, he may have a cause
of action for promissory estoppel. Wheeler v. White, 398 S.W.2d 93,
96-97 (Tex. 1965). Although normally a defensive theory, it may become available
as a cause of action to a promisee who has acted to his detriment in reasonable
reliance on an otherwise unenforceable promise. Id. at 97. The elements
of that cause of action include a promise, the promisor foreseeing that the
promisee will rely on it, and detrimental reliance by the promisee. English
v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983).
We have already held that the record
contains legally sufficient evidence for a reasonable jury, as charged in this
case, to find that negligent misrepresentations were made by MCN
representatives. We will not revisit that evidence here. In connection with its
sole cross-point, Omagro now argues generally that the evidence showing
negligent misrepresentations via words and conduct of MCN representatives
(Robles, Sharma, and Pai), equals more than a scintilla of evidence to support
Omagro's promissory estoppel claim. We disagree because Omagro does not identify
or make clear the specific nature of the promise or promises it alleges the MCN
representatives made. We overrule Omagro's sole cross-point.
Conclusion
We have carefully considered and overruled
MCN's five issues for the reasons stated. We hold that on the issue of negligent
misrepresentation, the evidence is legally sufficient to support the jury's
finding for Omagro. The issue presented by Omagro's sole cross-point is
overruled. We affirm the trial court's judgment.
 
                                                                               
DIXON W. HOLMAN
                                                                               
JUSTICE
 
PANEL B: HOLMAN, GARDNER, and WALKER, JJ.
[DELIVERED FEBRUARY 6, 2003]