**AFFIRM in Part,  REVERSE in Part, and REMAND; Opinion Filed February 5, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00065-CV

## JERRY CHAMBERS, MARSHA CHAMBERS, AND JASON CHAMBERS, Appellants
## V.
## ALLSTATE INSURANCE COMPANY, Appellee

**On Appeal from the 422nd Judicial District Court**
**Kaufman County, Texas**
**Trial Court Cause No. 87353-422**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Jerry, Marsha, and Jason Chambers appeal from an adverse final judgment in a lawsuit they filed against Allstate Insurance Company.  For the following reasons, we affirm the trial court's judgment in part, reverse in part, and remand.  We issue this memorandum opinion because the dispositive issues are settled in law.  TEX. R. APP. P. 47.4.

### BACKGROUND

In July 2008, Jerry[1] and Allstate's insured were involved in a traffic accident.  Jerry was riding a motorcycle and Allstate's insured was driving a car.  According to the pleadings, Allstate's insured was at fault.  About a month after the accident, Allstate offered to settle the property damage claims for $3,321 plus possession of the motorcycle.  Jerry accepted the offer;

---

[1] Because Jerry Chambers, his wife, Marsha, and his son Jason all sued Allstate, we refer to them by their first names when necessary for clarity.

however, before he transferred title to Allstate, Allstate took possession of the motorcycle and did not pay the Chambers. Representing themselves, the Chambers sued Allstate and its insured, among others, alleging multiple causes of action. They alleged that Allstate breached an oral contract with regard to the property damage claims. They also alleged that they and Allstate reached an agreement whereby Allstate would pay Jerry's medical expenses through August 18, 2008, which they alleged exceeded $197,000 because Jerry had to have a leg amputated as a result of the accident. The Chambers alleged that Allstate also breached that oral contract by failing to pay Jerry's medical expenses.

Allstate moved for no-evidence and traditional summary judgment on all but two of the Chambers' claims against it, and the trial court granted the motions. Allstate then offered the Chambers $8,321 to settle the remaining property damage claims. The Chambers accepted the offer and began negotiating the language for the settlement agreement. After several back-and-forth exchanges of proposed language, Allstate sent the Chambers by email a "Partial Release of Claims,"[2] a nonsuit of the property damage claims against its insured, and a nonsuit of the two remaining property damage claims against Allstate. The Chambers claimed they asked for additional changes to the release and that Allstate refused to make those changes.

On a Friday, the Chambers signed the release and nonsuits before a notary and returned the signed documents to Allstate by email. The following Monday morning, Marsha told Allstate they were rescinding their consent to the release and nonsuits. A few days later, however, Allstate mailed the settlement check to the Chambers by certified mail; the Chambers refused to accept delivery of the check. Allstate moved to enforce the release and nonsuits. Allstate asserted that it had performed under the release, but that the Chambers were "desir[ing]

---

[2] The release was designated "partial" because it disposed of only the two remaining claims against Allstate.

to breach the agreement and back out of the settlement." Allstate attached a copy of the signed release and nonsuits to its motion.

The Chambers responded that Allstate did not have their authority to file an emailed copy of the settlement documents, that non-original documents were not enforceable, and that the release was "incomplete" because it did not include "page 3.5." The Chambers alleged that Marsha had typed an additional page to the release, page 3.5, and they intended to include it as a counteroffer when they returned the release to Allstate. This page 3.5 contained a provision giving the Chambers a right to withdraw their agreement to the release and nonsuits before Allstate paid them. The response alleged that Marsha accidentally forgot to include page 3.5 with the release when she emailed it back to Allstate and only learned of her mistake about ten days later. As a result of this mistake, the Chambers argued, there was no meeting of the minds with regard to the release.

The trial court held an evidentiary hearing on Allstate's motion to enforce, but did not rule and asked for additional briefing about the enforcement of a settlement agreement when one party refused to negotiate the settlement check. Meanwhile Allstate moved to sever the claims against it and the court granted the motion. Allstate filed an amended motion to enforce the settlement agreement, adding case authority to support its arguments. Before the hearing on Allstate's amended motion, the Chambers amended their petition to include claims for promissory estoppel arising from the property damage and medical expenses related to the accident.

At the hearing on Allstate's amended motion to enforce the settlement agreement, the court concluded that the Chambers signed the release and nonsuits and agreed to settle the property damage claims. The court granted Allstate's motion, allowed Allstate to file the nonsuits, and placed the settlement check into its registry because the Chambers refused to

–3–

accept it. The Chambers subsequently filed a motion for summary judgment on their promissory estoppel claims. The court denied the motion "with prejudice."

A month or so later, the trial court on its own motion held a hearing to determine the status of the case. The court advised the Chambers that it had reviewed the court's file and concluded that there were no remaining claims because of the release the Chambers signed and the court's previous rulings related to Allstate. The Chambers argued that their claims for promissory estoppel had not been ruled on, but Allstate and the court disagreed. The court asked Allstate to incorporate all of the court's previous rulings into one final, appealable judgment.

Allstate prepared an order with the case numbers from both the original case and the severed case, and the court signed the order stating it was "final and appealable." When the Chambers appealed, we questioned our jurisdiction because there were many claims against multiple defendants in the original case that did not appear to be resolved. The trial court signed an "Order Nunc Pro Tunc" with just the severed case number, and we noted our jurisdiction over the appeal.

The Chambers raise fifteen issues on appeal. Although the argument section of their brief contains bold headings, the Chambers do not separately argue any of these fifteen issues; instead, they present one argument consisting of forty-one pages with no reference to any particular issue. Pro se appellants are held to the same standards as licensed attorneys and are required to comply with the laws and rules of procedure. *Strange v. Cont'l Cas. Co.*, 126 S.W.3d 676, 677–78 (Tex. App.—Dallas 2004, pet. denied). The rules require an appellant to make "a clear and concise argument for the contentions made[.]" TEX. R. APP. P. 38.1(i). We will consider the Chambers' issues if we can determine, with reasonable certainty, the error about which the complaint is made. *See Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.).

–4–

**ISSUES ON APPEAL**

The Chambers state their issues on appeal as follows:

(1) Did the prior 81338-422 court have sufficient legal and factual evidence to grant the Summary Judgment on the DTPA 17.46(b) (12) claim since the DTPA 17.46(b) (12) does not require consumer status to be established and does not require a contract to be formed because the only proof required by the DTPA 17.46 (b) (12) statute is that a representation was made which represented that it included rights and obligations that the maker, Allstate, later denied and that the Plaintiffs could show a resulting harm therefore, are the legal and factual sufficiency challenges and the no-evidence and insufficient evidence challenges which were presented to and preserved in the prior 81338-422 applicable to this appeal of the January 31, 2012 Judgment because this judgment was properly transferred into this present 87353-422 case on December 11, 2013 after the prior 81338-422 court lost preliminary power to modify the January 31, 2012 judgment thirty days after that judgment was rendered and thereafter not modified in any way by the 81338-422 court?

(2) Did the 87353-422 court have sufficient legal and factual evidence to enforce the admittedly accidentally incomplete 7 page e-mailed agreement presented by Allstate but not presented by Allstate under the State Meeting of the Mind Contact [sic] Laws and is it a Reversible, Remediable and Fundamental Error for a trial court to enforce any disputed rule 11 agreement other than under the necessary meeting of the mind elements of the State Contract Laws?

(3) Did the Plaintiffs have a statutory right to Amend their Petition under the 87353-422 cause number on July 9, 2013 since Allstate still had an active Motion for affirmative relief pending before the 87353-422 court on which Allstate's Active Motion was not heard and judgment was not rendered on until over 20 days later on July 30, 2013 and is the denial of the Plaintiffs statutory right to Amend their pleading a Fundamental, Remediable and/or Reversible Error of Law since a judgment which denies the Plaintiffs their right to Amend their Pleadings is a Due Process of Law Violation which is Against Public Interest as that Interest is Declared by the State Constitution and State Statutes?

(4) Can the 87353-422 court render a second judgment on pleadings and claims which are not presently before that court at the time the second judgment is rendered; or is this second judgment on the prior claims which had been previously determined by the prior 81338-422 court a Fundamental Error of Law which is Visible of [sic] the Face of the Judgment which Requires Reversal?

(5) Can a disputed Rule 11 Agreement Contract be enforced by judgment of a trial court AFTER a Trial by Jury Fee have [sic] been Paid if neither opposing party can conclusively show that a valid meeting of the minds occurred since neither party can then show that the [sic] either of the two different presented agreements had a valid meeting of minds occurrence and this meeting of the minds element is a necessary requirement under the State Contract Laws?

(6) Can a trial court rely on and continue relying on an improperly or incompletely sheppardized [sic] Padilla v LaFrance Texas Supreme Court case when that case is not on point with the present disputed fact issues and this Legal Sufficiency and Erroneous Error of Law along with the Mistaken Analyses and Application of the Law is presented to the trial court or is this action by the trial court an Judicially Bias Action and an Abuse of Discretion which caused an Improper Judgment to be Rendered by the trial court?

(7) Did the trial court's judicial enforce [sic] of an admittedly incomplete 7 page agreement presented by Allstate, which was disputed by the Plaintiffs, violate the Plaintiffs Due Process of Law Right to have disputed facts on which reasonable minds could differ resolved by a Finder of Fact Jury since this disputed fact issue was not even presented to the trial court by way of any summary judgment filed by Allstate since Allstate NEVER filed ANY Summary Judgment Motion or separate Breach of Contract Action in the present 87353-422 cause number?

(8) Could the Plaintiffs Summary Judgment Motion on the Promissory Estoppels Claim Plead in the Plaintiffs July 9, 2013 Amended Petition be Denied With Prejudice since this claim had never had any prior judgment rendered on this claim and this claim had never before been present [sic] to either the prior 81338-422 court or the present 87353-422 court or is the judicial action a Reversible or Remediable Error which Cause the Rendition of an Improper Judgment or an Abuse of the Trial Court's Discretion?

(9) Does a Promissory Estoppels claim require additional elements more than a Breach of Oral Contract Claim or is a Promissory Estoppels claim an alternative theory of recovery if some of the elements of a binding oral contact [sic] are found to be missing from a plaintiffs prior breach of contract claim and can a Promissory Estoppels Claim be Denied With Prejudice even if the trial court or a prior trial court has found that some of the necessary elements of a breach of contract claim were missing from the prior breach of contract claim made by the plaintiffs and the plaintiffs timely and properly amend their petition within the limitation requirements of Rule 63 and 64 of the Texas Rules of Civil Procedure?

(10) Does any documents, motions, or pleadings filed after a party is no longer a party to the suit have any affect upon that severed party or is an Error of Law for the Court to Allow a severed party to continue filing into a prior case when the severed party is no longer a party to the prior case?

(11) Do the merits of all actively plead claims have to be heard or at leased [sic] addressed and somehow resolved or listed in·the judgment rendered by the trial court when the trial court states that this judgment is a final and appealable judgment or would this type of incomplete judgment which does not address all actively plead claims be an erroneous judgment which requires reversal?

(12) Was the oral judgment that enforced the 7 page agreement presented by Allstate and Denied the 8 page agreement presented by the Plaintiffs a Judicially Bias Judgment and/or was this judgment an Abuse of the Trial Court's Discretion

–6–

since neither document could conclusively be proven to be a valid meeting of the minds contract?

(13) Could the trial court force the Plaintiffs into removing the page number 3.5 from their original signed and notarized document just because the trial court said that Allstate did [not] want the page numbered 3.5 or is this an Error of Law with [sic] requires Reversal since this judicial action of the trial court violates the Plaintiffs Due Process of Law Rights and the Contract Laws of the State of Texas?

(14) Can a defendant such as Allstate seek the trial court to back date an enforcement action judgment on a disputed, abandoned and withdrawn document agreement and get the court to then render an enforcement judgment which then allows the defendant to continue filing motions prepared and contingently offered over 14 months previously to the defendant since the entirety of the documents were never accepted by the defendant and were never filed as valid and final Rule 11 Agreement by the defendant into the prior cause number under which the documents were prepared under between the time the contingent documents were offered by the Plaintiffs on March 9, 2012 and the time of severance of the defendant from the prior cause on December 11, 2012; and since this offered 8 page agreement and the contingently offered Partial Non-Suit Motions·were never officially filed into the prior case as a Rule 11 Agreement until after the defendant was no longer a party to the case is this a Judicially Bias Action which caused the Rendition of an Improper Judgment which requires Reversal or would this action by the trial court be an Error of Law and a Mistaken Application and Analyses of the Applicable Law that Requires Reversal since this judicial action by the trial court would violate the plaintiffs due process of law rights and the public interest as that interest is declared by the constitution and statutes and would be creating additional rights and relief for the defendant by way of judgment which are adverse and in direct conflict with the public's interest as that interest is declared by constitution and statute?

(15) Does the January 31, 2012, the July 30, 2013, the September 20, 2013, the December 3, 2013 or the March 24, 2014 Judgments sufficiently violate the public's interest as that interest is declared in the constitution and state statutes and also the plaintiffs Due Process of Law Rights or Require Reversal Sufficiently for any or all of the judgments listed above to be Reversed on Appeal so that the Merits of the Plaintiffs Timely and Properly Filed Amended Petition Claims can be heard by the 87353-422 Trial Court since to do otherwise would also violate the public interest right to Amend Petitions as allowed and authorized by the Texas Rules of Civil Procedure Rules 63 and 64 and would also violate the Texas Civil Practice and Remedies Code 154.071(a) Statue [sic]?

### SUMMARY JUDGMENT ON DTPA SECTION 17.46 CLAIM

We construe issue one to argue that the trial court erred by granting Allstate's no-evidence motion for summary judgment on the Chambers' claim under section 17.46(b)(12) of

the DTPA.[3]  The Chambers challenge the "legal and factual evidence" to support the summary judgment.

The issue on appeal from a no-evidence summary judgment is whether the nonmovant presented evidence raising a genuine issue of material fact on the challenged elements.  TEX. R. CIV. P. 166(a)(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.).  The Chambers do not cite the evidence they filed in response to Allstate's no-evidence motion, and they do not argue how they raised a fact issue on the challenged elements of this claim.  Consequently, we have no basis upon which to conclude that the trial court erred by granting Allstate's no-evidence motion for summary judgment on the DTPA section 17.46(b)(12) claim.  We resolve issue one against the Chambers.

### AMENDED MOTION TO ENFORCE SETTLEMENT AGREEMENT

We construe issues two, five, six, seven, ten, twelve, thirteen, and parts of fourteen to complain about the trial court's order granting Allstate's amended motion to enforce the settlement agreement.[4]  We review a trial court's decision to enforce a settlement agreement for an abuse of discretion.  *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied).

The recurring theme throughout the Chambers' forty-one page argument is that the release was unenforceable because there was no meeting of the minds.  The Chambers argue that there were actually two agreements:  the release from Allstate that they signed and returned to Allstate by email, and the release that they signed containing page 3.5.  The Chambers argue that

---

[3] Section 17.46(b)(12) states that it is unlawful to represent that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law.  TEX. BUS. & COM. CODE ANN. § 17.46(b)(12) (West 2011).

[4] Ordinarily a motion to enforce is not the proper procedural device for attempting to enforce a settlement agreement.  *See Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658 (Tex. 1996) (per curiam); *Padilla v. LaFrance*, 907 S.W.2d 454, 462 (Tex. 1995).  The Chambers cite cases that discuss the proper procedure to be followed, but they do not complain on appeal about the procedure that was followed in this case.  Consequently, that issue is not before us and we do not address it.

the trial court abused its discretion by enforcing the release and nonsuits prepared by Allstate, and not enforcing the release the Chambers prepared containing the extra page. They also argue that because they never accepted Allstate's release without page 3.5, and Allstate never accepted the release with page 3.5, there was no valid agreement, or that the jury should have decided which agreement was valid.

If a party withdraws consent to a settlement agreement before judgment is rendered on the agreement, the trial court may not enforce the settlement agreement as an agreed judgment. *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). But the court may enforce it as a contract. *Id*. The only element of contract formation about which the Chambers complain is a meeting of the minds. *See Principal Life Ins. Co. v. Revalen Dev., LLC*, 358 S.W.3d 451, 454–55 (Tex. App.—Dallas 2012, pet. denied). "'To create an enforceable contract, the minds of the parties must meet with respect to the subject matter of the agreement and all its essential terms.'" *Better Bus. Bureau of Metro. Dall., Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 310 (Tex. App.—Dallas 2013, pet. denied) (quoting *In re C.H.C.*, 396 S.W.3d 33, 48 (Tex. App.—Dallas 2013, no pet.)). "[T]he offer must be reasonably definite in its terms and must sufficiently cover the essentials of the proposed transactions that, with an expression of assent, there will be a complete and definite agreement on all essential details." *Principal Life Ins. Co.*, 358 S.W.3d at 455.

The release that the Chambers signed and returned to Allstate stated in part:

[Allstate's insured] and Allstate Insurance Company have offered to pay unto Jerry Chambers and Marsha Chambers, – solely by way of compromise and settlement, – and the said Jerry Chambers and Marsha Chambers have agreed to accept, – solely by way of compromise and settlement, – the total sum of . . . ($8,321.00), in full and final settlement of all claims for property damages arising from the accident and the subsequent taking of the motorcycle, including but not limited to any and all PROPERTY DAMAGE claims and PROPERTY DAMAGE causes of action currently asserted in the Plaintiffs' live pleadings . . . .

–9–

**RELEASE**:

NOW, **THEREFORE, KNOW ALL MEN BY THESE PRESENTS:** That we, Jerry Chambers, Marsha Chambers and Jason Chambers, on behalf of ourselves and our heirs . . . for a good and valuable consideration in the sum of . . . ($8,321.00), do hereby **RELEASE, ACQUIT, QUITCLAIM** and **FOREVER DISCHARGE** [Allstate's insured] and Allstate Insurance Company . . . from any and all claims . . . arising directly or indirectly from or by reason of property damage caused by or related to the accident . . . .

We intend and acknowledge this PROPERTY DAMAGE release to be as broad and comprehensive as possible, and to encompass any claims we presently have, or may acquire or discover in the future, related to the property damage arising from or in any way related to the PROPERTY DAMAGE PORTION OF THE accident and the handling of the property damage claim . . . .

. . .

It is the intention of the parties to this Release that the consideration stated herein fully and completely compensate us for the PROPERTY damages, known and unknown, past and future, directly or indirectly resulting from or in any manner related to the property damage AND THE HANDLING OF THE PROPERTY DAMAGE CLAIM arising from or in any way related to the PROPERTY DAMAGE PORTION OF THE accident. It is each of our intention and each of us understands that by this Release we reserve no claims against the **RELEASED PARTIES** for property damage arising from or in any way related to the PROPERTY DAMAGE PORTION OF THE accident or for the handling of the SEPARATE PORTION OF THE property damage claim arising from or in any way related to the PROPERTY DAMAGE PORTION OF THE accident.

. . .

This agreement shall be deemed to be a contract made under the laws of the State of Texas and for all purposes shall be governed by and construed in accordance with the laws of the State of Texas, without giving regard to its principles of conflicts of law.

**ADMISSIBILITY OF COMPROMISE IN FUTURE PROCEEDINGS:**

The recitals mentioned herein are contractual and are not mere recitals. . . . [T]he **RELEASED PARTIES** may plead and introduce any or all of this Release as a bar and discharge. . . .

The release contained an offer to settle the property damage claims for a stated amount of money, and the language used in the release evidenced an intent that the contract be complete if accepted by the Chambers. We conclude that the release contained all the essential terms of a

–10–

contract, and after the Chambers signed it and returned it to Allstate, it became "a complete and definite agreement on all essential details." *See Principal Life Ins. Co.*, 358 S.W.3d at 455. Although the Chambers contend they changed the release before they signed it, the release they signed and returned to Allstate did not contain the change, and Allstate performed under the release by mailing the settlement check to the Chambers. We conclude that the trial court did not abuse its discretion by enforcing the settlement agreement. We resolve issues two, five, six, seven, ten, twelve, thirteen, and parts of fourteen against the Chambers.

### PROMISSORY ESTOPPEL CLAIM

We construe the Chambers' complaints in issues three, eight, nine, eleven, and fifteen to be that the trial court erred by denying their motion for summary judgment on their promissory estoppel claims, and the final order is "incomplete" and requires reversal because it did not address the promissory estoppel claims.

Generally a party may not appeal the denial of a motion for summary judgment. *Ackermann v. Vordenbaum*, 403 S.W.2d 362, 364–65 (Tex. 1966). To the extent the Chambers complain in these issues about the denial of their motion for summary judgment, we resolve those issues against them.

The Chambers also argued below that their promissory estoppel claims had not been addressed. The trial court advised the Chambers that all the claims had been ruled on and the case was over. On appeal, the Chambers argue that the final order is "incomplete" because they timely filed an amended petition alleging claims for promissory estoppel, but the final order did not address those claims. They argue that Allstate did not move for summary judgment on their promissory estoppel claims, and the trial court did not render summary judgment on their promissory estoppel claims.

–11–

The Chambers' amended petition alleged promissory estoppel with regard to two alleged promises by Allstate: a promise relating to the property damage claims, and a promise relating to Jerry's medical expenses. The trial court correctly concluded that the alleged promise relating to the property damage claims was resolved by summary judgment, the release, and nonsuits. However, the alleged promise relating to Jerry's medical expenses was not addressed in any of Allstate's summary judgment motions, and the release specifically stated that it did not release the Chambers' claim for Jerry's medical expenses.

We do not find Allstate's response to the Chambers' motion for summary judgment in our appellate record, but at the hearing Allstate argued that the promissory estoppel claim for medical expenses was an attempt "to reopen the breach of contract claim regarding the alleged illusory promise that involved the adjuster, what he said or didn't say with regard to the . . . medical expenses." Allstate also argued, "[S]he's calling it promissory estoppel. What she's asking the Court to do is open the January [summary] judgment and let her plead breach of contract again." We disagree.

A claim for breach of contract is not the same as a claim for promissory estoppel. *See Wheeler v. White*, 398 S.W.2d 93, 95–97 (Tex. 1965). The Chambers alleged that they were filing a claim for promissory estoppel as an alternative theory to their breach of contract claim because the trial court had earlier concluded that the Chambers and Allstate did not have a contract regarding the medical expenses. Their amended petition alleged that on August 18, 2008, Allstate offered to pay Jerry's "current medical expenses," that they accepted the offer, and that Allstate failed to perform as promised. The Chambers sought specific performance, asserting that they justifiably relied to their detriment on Allstate's promise by signing "a Secondary Contract Agreement to Repay the Hospitalization Insurance Company by and through

–12–

the Payments that Allstate had Promised to Pay Directly to the Medical Providers concerning all the current medical expenses which had accrued between July 9, 2008 and August 18, 2008[.]"

The record of the hearings conducted by the trial court in this case show the court exercised an abundance of time and patience in determining the substance of the Chambers' numerous and lengthy pro se pleadings. But our review of the record shows that although the trial court thought it had disposed of all the Chambers' claims, one claim remained unresolved— the promissory estoppel claim relating to Jerry's medical expenses. The only ruling on this claim was the trial court's denial of the Chambers' motion for summary judgment. When a court denies a summary judgment motion, it means the movant did not carry its "burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). A denial of a summary judgment motion is not a take-nothing judgment on the claim. *See id.*

To the extent issues three, eight, nine, eleven, and fifteen complain that the final order is "incomplete" because the trial court did not address their claim for promissory estoppel relating to Jerry's medical expenses, we sustain those issues. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–05 (Tex. 2001) (a judgment may be final yet erroneous).

**SEVERANCE AND FINAL ORDER**

We construe issues four and parts of fourteen to generally complain about the way documents were filed in the severed case and how prior rulings were incorporated into the final order.

The Chambers argue that many of the documents from the original case were filed in the appellate record in this appeal of the severed case, but "do not have any thing to do with this case because these documents were filed untimely in the prior 81338-422 case AFTER severance and

could not be transferred" to the severed case. They argue that these documents "have <u>No Affect</u> on the present 85353-422 case which is the present case before this Appellate Court."

Some of the documents about which the Chambers complain were drafted and signed before the trial court severed the claims against Allstate and, as a result, properly contained the original case number. When the trial court severed the claims against Allstate, the case number on these documents was not changed, but the documents were properly considered as part of the severed case because they related to claims against Allstate. *See* TEX. R. CIV. P. 41 ("Any claim against a party may be severed and proceeded with separately."); *see also Padilla*, 907 S.W.2d at 459 (concluding that record on appeal of severed case properly contained records filed in original case before severance order signed); *Tanner v. Karnavas*, 86 S.W.3d 737, 744–45 (Tex. App.— Dallas 2002, pet. denied).

The documents about which the Chambers complain relate to their claims against Allstate, regardless of whether they were initially filed in the original case or the severed case. *See Blankenship v. Robins*, 878 S.W.2d 138, 139 (Tex. 1994) (per curiam) (reviewing courts' decisions should "turn on substance rather than procedural technicality") (quoting *City of San Antonio v. Rodriguez*, 828 S.W.2d 417, 418 (Tex. 1992) (per curiam)). And when the trial court severed the claims against Allstate, the trial court properly considered its rulings from the original case in determining whether all claims against Allstate had been resolved. *See id*.

The Chambers also contend that when the trial court rendered the final order in the severed case that it ruled a "second time" on certain motions and claims from the original case and that the trial court did not have jurisdiction to do so. We disagree.

The trial court asked Allstate to prepare one order that incorporated all the court's rulings related to Allstate and would be final and appealable. Allstate prepared an order setting out the court's prior rulings on Allstate's motions, but the order did not recite the date those rulings were

–14–

made. The order contains only the date the final order was signed. Regardless, we conclude that the final order did not grant those motions a second time, but merely summarized all the rulings related to Allstate. The Chambers do not cite and we know of no authority prohibiting a trial court from summarizing its prior rulings in the final judgment. We resolve issues four and parts of fourteen against the Chambers.

## CONCLUSION

We reverse the trial court's March 24, 2014 Order Nunc Pro Tunc on the Chambers' claim for promissory estoppel arising from Allstate's alleged promise to pay Jerry's medical expenses through August 18, 2008. In all other respects, we affirm the trial court's order. We remand this cause to the trial court for further proceedings consistent with this opinion.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

140065F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JERRY CHAMBERS, MARSHA
CHAMBERS, AND JASON CHAMBERS,
Appellants

No. 05-14-00065-CV     V.

ALLSTATE INSURANCE COMPANY,
Appellee

On Appeal from the 422nd Judicial District
Court, Kaufman County, Texas
Trial Court Cause No. 87353-422.
Opinion delivered by Justice Lang-Miers,
Justices Bridges and Myers participating.

In accordance with this Court's opinion of this date, the March 24, 2014 Order Nunc Pro Tunc of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the March 24, 2014 Order Nunc Pro Tunc that disposed of Appellants' claim for promissory estoppel arising from Appellee's alleged promise to pay Jerry Chambers's medical expenses through August 18, 2008. In all other respects, the March 24, 2014 Order Nunc Pro Tunc is **AFFIRMED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 5th day of February, 2015.